**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Z. T. KENNEDY, Defendant-Appellant.**

No. 75–3334.

United States Court of Appeals, Fifth Circuit.

March 14, 1977.

Rehearing and Rehearing En Banc Denied May 26, 1977.

Clarence F. Seeliger (Court appointed), Decatur, Ga., for defendant-appellant.

John W. Stokes, U. S. Atty., Dorothy T. Beasley, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before GOLDBERG, SIMPSON and GEE, Circuit Judges.

GOLDBERG, Circuit Judge:

In a July 1975 trial in the United States District Court for the Northern District of Georgia, a jury determined that appellant Z. T. Kennedy was guilty of robbery of a federally insured bank by force, violence, and intimidation, in violation of 18 U.S.C. § 2113(a). The only serious question presented by this appeal concerns the presence of three volunteers on that jury.

We conclude that the emergency use of volunteer jurors selected from those citizens who have just finished a term of jury service violated both the letter and spirit of the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1869 (hereinafter the Act), and its requirement of random selection from eligible members of the community. We condemn the practice, note its apparent demise, and put all districts under our jurisdiction on notice that its resurrection shall not be brooked.

We also conclude, however, that this appellant cannot avail himself of this substantial failure to comply with the Act. He inexcusably failed to meet the strict formal prerequisites that Congress established as the exclusive means for challenging juries selected in violation of the Act. Moreover, while the use of volunteers violated the strict statutory requirement of random selection, it did not deprive appellant of his constitutional right to a jury drawn from a fair cross section of the community.

Because appellant is foreclosed from asserting the violation of the statutory jury selection procedure and because the jury selection method employed visited no constitutional harm on him, the judgment of conviction is affirmed.

## I. Facts and Proceedings Below

On June 11, 1975, appellant was brought to trial before Judge Freeman on both the robbery charge involved in this appeal and a charge of making a false statement regarding prior criminal record while purchasing a firearm. On appellant's motion the judge granted a mistrial to allow severance of the two counts. Trial on the bank robbery charge commenced before Judge Moye July 9, 1975. That trial resulted in the guilty verdict from which this appeal is taken.[1]

---

1. Appellant urges here that the retrial violated the double jeopardy clause of the fifth amendment. The mistrial was granted at his request. Accordingly, the double jeopardy clause barred reprosecution only if the mistrial was the result of grossly negligent or intentional misconduct by judge or prosecutor, conduct which was undertaken to harass the accused by successive prosecution or to gain the prosecution a better shot at conviction. See United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); United States v. Kessler, 530 F.2d 1246 (5th Cir. 1976); United States v. Beasley, 479 F.2d 1123 (5th Cir.), cert. denied, 414 U.S. 924, 94 S.Ct. 252, 38 L.Ed.2d 158 (1973).

The record discloses no grossly negligent or intentional misconduct in connection with the three areas of prosecutorial overreaching alleged here—joinder of the robbery and firearms purchase counts, noncompliance with dis-

Among the prospective jurors for the second trial were several who had served as jurors at the prior term of the district court, during which appellant's abortive first trial had taken place. In order to satisfy a deficiency in the number of July prospects available from the qualified jury wheel, the jury clerk, pursuant to standing authorization from the chief judge of the district, had sought volunteers from the list of persons serving during the June term just completed.

No one has provided us any indication how the jury clerk selected from that list the names of prospective volunteers. Once she selected a name, however, the jury clerk's practice was the following, as best discerned from the record: she contacted the former jurors by telephone and asked them if they would perform additional service. She made clear that such service was not mandatory, that she was simply seeking volunteers. She told the volunteers when to report to court; they were not subpoenaed.

Prior to the voir dire for the July trial, the judge struck several prospective volunteer jurors because of possible knowledge gained during their presence in the courthouse during the June proceedings involving appellant. Three volunteers remained on the panel from which a jury would be selected. Just prior to the voir dire of this panel, counsel for appellant orally noted his objection that the presence of the volunteers violated the "random selection rule".

The attorneys then conducted an extensive voir dire of the panel. The three volunteers were individually questioned at length regarding possible knowledge of Kennedy or his prosecution. The three also confirmed that the jury clerk had telephoned them and had asked them to perform additional service. They understood themselves to be acting on a voluntary basis.

At the conclusion of the voir dire, defense counsel renewed his objection to the presence of volunteers. Government counsel made no comment. The court overruled the objection. The trial judge stated his reasons briefly:

> The court believes that they were randomly selected by reason of their prior summons for service in June and the court does not believe at this time that the service for an extra period of time by jurors who are willing to do so constitutes a violation of the requirement that jurors are to be randomly selected : . . .

The judge also found no evidence of any prejudice against Kennedy on the part of the three volunteers. The three sat on the jury that returned the guilty verdict before us on appeal.

## II. Volunteer Jurors and the Jury Selection Act

■ The Act provides for dismissal of an indictment, following proper objection, upon a court's determination that there has been a substantial failure to comply with the statutory procedures in selecting a grand or petit jury. 28 U.S.C. § 1867(a). It is abundantly clear that the practice of filling gaps in the month's jury pool with volunteers from last month's jurors introduces a significant element of nonrandomization into the selection process that not only technically violates, but substantially departs from, the Act's requirements.

### A. Inconsistency with the Act

The practice unquestionably deviated from the Act's provisions governing petit juror selection in the normal course. The statute provides that the jury clerk shall from time to time "publicly draw at random from the qualified jury wheel such number of names of persons as may be required for assignment to grand and petit jury panels." 28 U.S.C. § 1866(a).[2] The names are placed

covery orders, and the purported link between the prosecution and certain pretrial publicity. This is obviously not to say that a defense-requested mistrial prompted by prosecutorial misconduct in these areas would not bar re-

prosecution; it is to say that, on our review of this record, we have not found any indication of grossly negligent or intentional misconduct.

2. The qualified jury wheel is itself based on a random drawing from the voter registration list

in grand and petit jury panel lists. When the court orders a jury to be drawn, the jury clerk issues summonses for the required number from the appropriate list. 28 U.S.C. § 1866(a), (b).

The volunteers who sat on appellant's July jury were selected for the prior June term in accordance with the above scheme. When the July term arrived, their names were thus no longer on the lists of those drawn from the qualified jury wheel for assignment to panels. Indeed, it was the very inadequacy of available petit jurors drawn from the qualified jury wheel that prompted resort to the prior month's juror list.

The Act does specifically authorize a court to deal with such unanticipated shortages of petit jurors drawn from the qualified jury wheel. It provides that in such a situation,

> "the court may require the marshal to summon a sufficient number of petit jurors selected *at random* from the voter registration lists, lists of actual voters, or other lists specified in the plan, in a manner ordered by the court consistent with sections 1861 and 1862 of this title.

28 U.S.C. § 1866(f) (emphasis added).[3] It is on § 1866(f) that the Government must and does rest its argument that the employment

of volunteers to meet a shortage was not a violation of the Act. Even this argument, however, proves inadequate.

Even assuming that the list of last month's jurors was an acceptable list from which to select emergency jurors under § 1866(f),[4] we would still confront the telling contradiction between the use of volunteers and the random selection mandated as explicitly by the emergency provision as by the remainder of the Act. Whatever list a court uses as the source of emergency jurors, § 1866(f) requires random selection from that list. It seems self-evident that allowing people to decide whether they wish to perform a particular task is quite the opposite of randomly selecting those who, unless within narrow and objectively determined categories of exemptions and excuses, must perform the task.[5] A volunteer is not a random selectee.

### B. Substantiality of the Statutory Violation

Moreover, this failure to comply with the Act must be seen as "substantial", sufficient ground under § 1867(a) to dismiss the indictment. This court has recently had occasion to elaborate on § 1867's "substantial failure to comply" test. In *United States v. Davis,* 546 F.2d 583, 589, 5th Cir., 1977, we said the following:

---

(or other list if the voter registration list is inadequate to ensure a fair cross section of the community). The names drawn are placed in a master jury wheel. Persons randomly selected from the master wheel are sent juror qualification forms, from which the court determines whether the jurors meet the objective qualifications defined by the statute or are within the classes of exemptions or excuses, determined by objective criteria, set out in the statute or district plan. 28 U.S.C. §§ 1863–1865.

**3.** Sections 1861 and 1862 set forth the guarantee to litigants of juries selected at random from a fair cross section of the community and the prohibition against exclusion of a juror on the basis of race, religion, sex, national origin, or economic status.

**4.** The Government argues that the list of last month's jurors was an "other list specified by the plan", from which emergency jurors could be drawn under § 1866(f). The section suggests otherwise. It provides for emergency resort to direct selection from "voter registration

lists, lists of actual voters, or other lists specified in the plan". This language appears to be a reference to the lists from which each district selects its *master* jury wheel. Generally voter registration or actual voter lists are employed. Where those prove inadequate to serve the Act's random selection and antidiscrimination policies, other lists may also be employed. The parallelism between the lists referred to in § 1866(f) and those which the Act sets as the source of the master jury wheel suggests that the "other lists" in § 1866(f) could not include as narrow a source as the list of last month's jurors.

**5.** While we do not regard as determinative the fact that the volunteer jurors did not receive a summons for their July service, the requirement of a summons in § 1866(f) lends additional weight to the notion that personal preference of prospective jurors is not to be a factor in even the emergency juror selection process.

Determining the substantial compliance question requires that the alleged violations of the Act be weighed against the goals of the statute. The major policy of the Act is that juries shall be 'selected at random from a fair cross section of the community.' 28 U.S.C. § 1861. Discrimination is prohibited in the selection process.

(emphasis added). Otherwise technical violations of the statute constitute "substantial failure to comply" when they affect the random nature or objectivity of the selection process.

That the introduction of personal predilections of prospective jurors affects the random nature of the selection process cannot be gainsaid. Surely a district would be in substantial violation of the statute if it selected all its jurors by randomly drawing names from the qualified jury wheel and allowing those selected to opt in or out at will. Limiting such a policy to emergency shortages does not mitigate its nonrandom nature.

We need not speculate as to what sort of biases will be reflected in a jury chosen on the basis of its members' willingness to depart from their daily business and serve as jurors. It is enough to recognize that a substantial variable, not contemplated by the Act's few, narrow categories of qualifications, exemptions, and excuses, has confounded the selection process.[6]

The fact that the volunteers on appellant's jury were randomly selected without regard to personal convenience during the prior month is of no moment. Nonrandom selection of a subgroup from a randomly selected group does not make for a randomly selected subgroup. Former purity cannot randomize what has become unrandom.

Section 1866(f) requires that emergency jurors be randomly selected. There is no suggestion in that subsection that Congress intended to allow greater play for the prospects' personal preferences in this aspect of jury selection than in any other.

■ A litigant need not show prejudice to establish a "substantial failure to comply" with the Act. Congress deleted just such a requirement from the bill presented to the conference committee. See H.R.Rep. No. 1076, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S.Code Cong. & Admin. News, pp. 1792, 1806. Moreover, when a statutory violation directly affects the random nature of the selection process, there is no need to show that the violation tended to exclude some cognizable group from that process.[7] Congress did not simply outlaw certain disparities in representation of certain groups on juries; it designed a procedure of random selection to ensure that no such disparities would arise. A departure from the statutory scheme that directly affects the random nature of selection establishes a substantial violation independently of the departure's consequences in a particular case.

Providing prospective jurors with complete discretion whether or not to serve negates the statutory mandate of random selection. The practice of the district court amounted to a "substantial failure to comply" with the Act. Accordingly, had appellant properly preserved his objection to the practice, he would clearly have been entitled to relief.

III. Failure to Preserve Statutory Objection

■ Unjust as it may seem at first blush, however, appellant cannot avail himself of

---

6. The Act's provision for excuse from jury service on the basis of extreme inconvenience is noteworthy. A prospective juror drawn from the qualified wheel cannot permanently escape service because of hardship or extreme inconvenience. Even if he or she meets the strict standard for the excuse, the prospective juror must serve as soon as the hardship or inconvenience terminates. 28 U.S.C. § 1866(c). This provision indicates that the Act and its random selection policy leave no room for the additional operation of personal preference on the part of those whose names are drawn for jury service.

7. Such a showing, as well as any other evidence that the random nature of selection had been affected, would of course be competent to indicate the substantiality of violations that do not themselves inherently impinge on the random nature of the process.

the district court's substantial failure to comply with the Act's jury selection procedures. His counsel objected to the presence of volunteers on the jury panel only by oral objection at the outset of the voir dire. Counsel stated that the use of volunteers violated the random selection rule, and he asked that all volunteers be struck. A conclusion that this form of objection was adequate to preserve the claim of departure from the Act would run strongly in the face of contrary language in the Act itself, its legislative history, and judicial interpretation to date.

28 U.S.C. § 1867 sets out the method for challenging jury selection on the basis of substantial noncompliance with the Act. Section 1867(a) requires a defendant prior to the voir dire to move to dismiss the indictment or stay the proceedings. Section 1867(d) requires that the motion be accompanied by a sworn statement of facts that, if true, demonstrate a substantial failure to comply with the Act. Section 1867(e) states that the procedures prescribed in § 1867 are the exclusive means by which a defendant may challenge a jury on the basis of noncompliance with the Act.

Significantly, counsel for appellant omitted to accompany his motion with the required sworn statement. The legislative history makes clear that this requirement was considered independently important as a means for discouraging spurious challenges filed for dilatory purposes. The reports of both Houses contain this comment regarding the sworn statement:

> This threshold requirement to a successful challenge will make it possible for the judge to review a challenge motion and swiftly dispose of it if it fails, on its face, to state a case for which a remedy could be granted.

H.R.Rep. No. 1076, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.Code Cong. & Admin.News, pp. 1792, 1806; S.Rep. 891, 90th Cong., 1st Sess. 33 (1967).

The courts have strictly enforced both the timeliness and sworn statement requirements of § 1867. This court has refused to consider a statutory challenge raised after the empanelling of a jury. *See United States v. DeAlba-Conrado,* 481 F.2d 1266 (5th Cir. 1973).

We have not had occasion to address specifically the sworn statement requirement. The Second Circuit has found compliance with this requirement also to be a necessary prerequisite to a challenge to a jury based on the Act. *See United States v. Jones,* 480 F.2d 1135 (2nd Cir. 1973). Other courts have in dicta stated that such compliance will be required. *See United States v. Jasper,* 523 F.2d 395 (10th Cir. 1975), *cert. denied,* 423 U.S. 1075, 96 S.Ct. 859, 47 L.Ed.2d 85 (1976); *United States v. James,* 453 F.2d 27 (9th Cir. 1971); *United States v. Mitchell,* 397 F.Supp. 166 (D.D.C.1974).

Enforcement of the sworn statement requirement arguably should be waived where the facts underlying the challenge, such as the presence of volunteer jurors, are undisputed and known to the court. We conclude, however, that Congress left no room for ad hoc review of the usefulness of compliance with this requirement. Absent some indication from particular circumstances that counsel could not reasonably have been expected to comply with the procedural prerequisites to a statutory challenge to the jury, the claim under the Act will be forfeited by noncompliance. This record discloses no such circumstances excusing the omission of the sworn statement.

Barring assertion of the statutory claim here visits no great injustice on this appellant. In the Act, Congress set out a uniform, relatively strict scheme for jury selection. Congress included a new remedy for substantial violations of the Act, regardless of whether the litigant challenging the jury had been prejudiced by the jury selection. As a price for this remedy, Congress was entitled to exact strict compliance with formal procedural rules.

Enforcement of that price may seem harsh in the individual case. Nevertheless, as this court explained in *DeAlba-Conrado, supra,* forfeiture of the statutory claim in no way affects the sanctity of a defendant's due process right to be tried by a jury drawn from a fair cross section of the com-

munity. While a properly preserved claim of substantial noncompliance with the Act would of course require reversal if meritorious, the fundamental justice of a conviction remains intact if the jury selection procedure did not transgress that due process guarantee.

## IV. Denial of a Fair Cross Section

Appellant here contends that the use of volunteer jurors violated his due process rights. We cannot agree.

■ The due process clause does not itself guarantee a defendant a randomly selected jury, but simply a jury drawn from a fair cross section of the community. A claim of denial of this due process right requires a showing that the jury selection process tended to exclude or underrepresent some discernable class of persons and consequently to defeat a fair possibility for obtaining a truly representative cross section. *See United States v. DeAlba-Conrado, supra.*

■ In a slightly different procedural context, the District of Columbia Circuit has rejected the notion that selecting jurors on the basis of willingness to perform lengthy service automatically results in an unrepresentative body. *See United States v. Anderson,* 165 U.S.App.D.C. 390, 509 F.2d 312 (1974).[8] As in *Anderson,* we have nothing before us but the bare allegation that volunteers can never be representative of the community. Absent any indication that the use of volunteers actually operated in a particular case to underrepresent some discernible group of persons and thus to diminish the representative nature of the jurors, we see no reason to disagree with the judgment of the District of Columbia Circuit on the constitutional question.

Appellant did not attempt any showing regarding the actual effects of the use of volunteers in terms of the characteristics of persons included or excluded, and we cannot conclude on our own that the selection method distorted the representativeness of the jury. There is no indication that any leeway given the jury clerk in selecting volunteers had any discriminatory impact.

None of this is to approve of the selection of volunteer jurors below. As emphasized above, we roundly condemn this practice and expect not to review it again. That the practice violated the Act does not, however, establish a constitutional dereliction. We have simply seen or heard nothing to demonstrate that the practice operated to deprive this appellant of his constitutional right to a jury drawn from a fair cross section of the community.

## Conclusion

Unanticipated shortages of jurors unquestionably place a strain on the trial courts, and we do not wish to deter resourcefulness or improvisation in alleviating that strain. Fidelity to the principle of random selection, however, requires that the gaps be filled not only by those who, whether for laudable zeal or lack of alternatives, are most eager to fill them. Government counsel stated at argument her belief that the district court no longer resorted to volunteers. Today's decision in any case lays the practice permanently to rest.

Because appellant did not properly preserve his claim that the use of volunteers substantially departed from the random selection rule of the Jury Selection and Service Act of 1968, however, and because he has made not the least showing that the jury selection process resulted in a panel unrepresentative of the community, the judgment of conviction below is

AFFIRMED.

---

8. In *Anderson,* jury selection for what was anticipated to be a two week trial took place on the final day of the regular term of jury service.

The Judge asked who would be willing to perform the additional service, and he selected jurors from among the respondents.