**UNITED STATES of America**

v.

**Henry S. BRANSCOME.**

**CR. No. 81–00116–01–R.**

United States District Court, E. D. Virginia, Richmond Division.

Jan. 12, 1982.

Raymond A. Carpenter, Asst. U. S. Atty., Richmond, Va., for plaintiff.

Anthony F. Troy, Richmond, Va., Vincent J. Fuller, Barry S. Simon, William J. Murphy, Williams & Connolly, Washington, D. C., for defendant.

## ORDER

WARRINER, District Judge.

The defendant in the above-styled matter was indicted by the grand jury on 9 December 1981 on four counts charging tax evasion and the filing of false returns. Defendant now moves this Court to quash the indictment on the grounds that the method used to impanel the grand jury violated both the spirit and letter of the Jury Selection and Service Act of 1968, Pub.L.No.90–274, 82 Stat. 53, as amended, 28 U.S.C. § 1861 et seq., (hereinafter "the Act") so as to constitute a "substantial failure to comply" with the provisions. Defendant asserts that the procedures used to impanel the grand jury on 1 December 1980 included the swearing into service of all members of the pool of potential grand jurors who volunteered to serve on the grand jury. Defendant asserts the procedure violated the dictates of sections 1861 and 1866 of the Act which require that such jurors be selected "at random." 28 U.S.C. §§ 1861, 1866.

The facts giving rise to the motion are as follows. On 1 December 1980 the duly summoned group of potential grand jurors appeared before the Court. The Court, after brief introductory remarks, inquired whether anyone wished to be excused from jury duty because it would be too burdensome for him to serve. After hearing from those who responded to this inquiry, the Court inquired as to whether any of the group particularly wished to serve on the jury. Five persons responded affirmatively. After the foreman and deputy foreman had been sworn the five volunteers, in addition to one other who had previously stated to the Court that he had no excuse to avoid jury duty, were called forward and sworn in. The remainder of the 23-person panel was filled by lottery.

Defendant contends that the aforementioned procedure violates the letter and the spirit of the Act. The Act states:

It is the policy of the United States that all litigants in federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in

the district or division wherein the court convenes. It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose.

28 U.S.C. § 1861. Defendant asserts that allowing potential grand jurors to volunteer for service strikes at the very core of the Act, see *United States v. Computer Sciences Corp.*, 511 F.Supp. 1125, 1142 (E.D.Va.1981). Such a selection process, defendant argues, erodes the defendant's right to have a grand jury chosen at random and conflicts with the statutory policy that all citizens should have both an equal opportunity and an equal obligation to serve on a grand jury.

As was stated by both the House and Senate Judiciary Committees in their reports on the bill from which the Act was derived:

> [The Act] embodies two important general principles: (1) random selection of juror names from the voter lists of the district or division in which the court is held; and (2) determination of juror disqualifications, excuses, exemptions, and exclusions on the basis of objective criteria only. These principles provide the best method for obtaining jury lists that represent a cross section of the relevant community and for establishing an effective bulwark against impermissible forms of discrimination and arbitrariness.

H.R.Rep.No.1076, 90th Cong., 2d Sess. 4 (1968), reprinted in [1968] U.S.Code Cong. & Ad.News 1792, 1793: S.Rep.No.891, 90th Cong., 1st Sess. 15 (1967).

Although the Act does not require a grand jury or petit jury to mirror the make-up of the community from which it is drawn, "the act attempts to achieve its cross sectional aim by insuring that the basic source list is adequate in that regard and that no procedure is employed that would impermissibly diminish the likelihood that a cross section would be obtained." H.R.Rep.No.1076, at 5, reprinted in [1968] U.S.Code Cong. & Ad.News at 1794; S.Rep. No.891, at 17. It cannot be gainsaid that choosing volunteers from a group of potential grand jurors is a procedure that conceivably may diminish the likelihood that a fair cross section of the community will be represented on a given grand jury.

Defendant's second contention is that the impanelling procedure conflicted with the specific requirements set forth in the Act for the summoning and selection of grand jury panels. The Act prescribes that the Clerk shall, from time to time, publicly draw at random a sufficient number of persons as may be required for assignment to grand and petit jury panels. 28 U.S.C. § 1866(a). Once the group of potential jurors has been summoned and appears, the Act delimits precise objective grounds upon which a potential juror may be "disqualified, excluded, excused, or exempt[ed] from service." 28 U.S.C. § 1866(c).[1] The limited grounds for excluding or excusing otherwise qualified persons from jury service were chosen purposefully by Congress. The congressional reports accompanying the Act state:

> The second principal—determination of disqualifications, excuses, exemptions and exclusions on the basis of objective criteria only—is designed to work with random selection to produce juries that rep-

---

1. The grounds as set forth in Section 1866(c) are as follows:

   [A]ny person summoned for jury service may be (1) excused by the court upon a showing of undue hardship or extreme inconvenience, for such period as the court deems necessary, at the conclusion of which such person shall be summoned again for jury service under subsection (b) and (c) of this section, or (2) excluded by the court on the ground that such person may be unable to render impar-

   tial jury service or that his service as a juror would be likely to disrupt the proceedings, or (3) excluded upon peremptory challenge as provided by law, (4) excluded pursuant to the procedure specified by law upon a challenge by any party for good cause shown, or (5) excluded upon determination by the court that his service as a juror would be likely to threaten the secrecy of the proceedings, or otherwise adversely affect the integrity of jury deliberations.

resent the community fairly. In essence, this principle would prohibit the widespread current practice of imposing qualifications above and beyond those specified by Congress. Many Federal district courts and officials administering jury selection treat the present statutory qualification requirements—citizenship, age, residence, literacy, health, and lawful behavior—as minimum standards to which may be added subjective notions of "good character, approved integrity, sound judgment and fair education." See e.g. *United States v. Hunt,* 265 F.Supp. 178, 183 (W.D.Texas 1967). In at least some instances, even though the jury selection officials were well intentioned, these additional qualification requirements have produced discriminatory results, especially in relation to the poor and other minorities. See e.g. *Rabinowitz v. United States,* 366 F.2d 34 (5th Cir. 1966). Moreover, the committee does not believe that additional qualifications are necessary to obtain jurors with intelligence and good judgment sufficient to understand and render an appropriate verdict. Accordingly, the bill prohibits them.

H.R.Rep.No.1076, at 5, reprinted in [1968] U.S.Code Cong. & Ad.News, at 1795; S.Rep. No.891, at 17–18.

**2.** In this regard, Judiciary Committees noted: Under the Bill, each [district's] plan will specify groups whose members may be excused or exempt from service. Although individual hardship excuses will still be possible, the specification of the groups who may justifiably avoid jury service will make it more difficult for members of the community who do not fall within these groups to avoid service on spurious grounds. Many professional and business people who now easily avoid service on the ground that they are "busy people." Some will still be able to obtain individual excuses when they are under genuine hardship. But the casual granting of excuses to these presumably more intelligent members of the community will no longer be possible. Enhanced jury performance, as well as an enhanced community cross section, will be the result.

Jury performance will be enhanced as well by closer approximation of the cross sectional goal under the bill. It must be remembered that the jury is designed not only to understand the case, but also to reflect the community's sense of justice in deciding it.

■ The procedure utilized in the instant case effectively added a qualification for jury service so that some of the potential jurors who failed to volunteer were excluded from service. Such practice conflicts with the statutory dictate that jurors should be selected randomly and then excused or exempted based only upon the narrow set of objective criteria set forth in section 1866(c). In passing the Act, Congress was aware of the hardship which jury duty often imposes on those who must serve. However, Congress believed that grand and petit jury service is an obligation that must be borne by each citizen. Obviously, subjective self-screening by volunteer jurors would undermine this policy.[2]

Defendant's position receives compelling support from the decision of the Court of Appeals for the Fifth Circuit in *United States v. Kennedy,* 548 F.2d 608 (5th Cir. 1977), cert. denied, 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1978). The Court in *Kennedy* condemned the practice of choosing volunteers for petit jury service and held such to constitute a substantial violation of the Act sufficient to warrant relief pursuant to section 1867(d).[3] The *Kennedy* court affirmed the conviction as the defendant had failed to meet the strict formal prerequisites that Congress established as

As long as there are significant departures from the cross sectional goal, biased juries are the result—biased in the sense that they reflect a slanted view of the community they are supposed to represent.

H.R.Rep.No.1076, at 7–8, reprinted in [1968] U.S.Code Cong. & Ad.News, at 1797; S.Rep. No.891, at 23–24.

**3.** Section 1867(d) of the Act provides in pertinent part:

If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the grand jury, the court shall stay the proceedings pending the selection of a grand jury in conformity with this title or dismiss the indictment, whichever is appropriate. If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the petit jury, the court shall stay the proceedings pending the selection of a petit jury in conformity with this title [28 U.S.C. § 1867].

the exclusive means for challenging juries selected in violation of the Act. No such problem exists here.[4]

In *Kennedy,* the district court resolved a shortage of potential petit jurors by having the clerk request volunteers from the list of persons who had completed jury service in the previous month. Three such volunteers served on the jury that convicted Kennedy. Kennedy appealed to the Court of Appeals for the Fifth Circuit which held:

> It is abundantly clear that the practice of filling gaps in the month's jury pool with volunteers from last month's jurors introduces a significant element of nonrandomization into the selection process that not only technically violates, but substantially departs from, the Act's requirements.

548 F.2d at 610. The Court observed that the trial court's procedure deviated from the Act's provisions governing petit jury selection for both the normal course of events and in emergency situations. The Act specifically authorized a court to deal with unanticipated shortages of petit jurors by "requir[ing] the marshal to summon a sufficient number of petit jurors selected at random from the voter registration lists, lists of actual voters, or other lists specified in the plan." 28 U.S.C. § 1866(f). The Court observed further that even if a prior month's list were appropriate to use as the source of emergency jurors, section 1866(f) nonetheless would require random selection from that list. The Court, finding that the requirements for selecting juries in emergency situations was consistent with the required random selection in the normal course of events, stated:

> It seems self-evident that allowing people to decide whether they wish to perform a particular task is quite the opposite of randomly selecting those who, unless within narrow and objectively determined categories of exemptions and excuses, must perform the task. A volunteer is not a random selectee.

548 F.2d at 611 (footnote omitted).

The Court then found that the failure to comply with the Act was "substantial," and a sufficient ground under Section 1867(a) to warrant relief. 548 F.2d at 611.[5] The Court explained:

> This court has recently had occasion to elaborate on § 1867's "substantial failure to comply" test. In *United States v. Davis,* 546 F.2d 583, 589, 5th Cir. 1977, we said the following:
>
> > Determining the substantial compliance question requires that the alleged violations of the Act be weighed against the goals of the statute. The major policy of the Act is that juries shall be 'selected at random from a fair cross section of the community.' 28 U.S.C. § 1861. Discrimination is prohibited in the selection process.
>
> (emphasis added). Otherwise technical violations of the statute constitute "substantial failure to comply" when they affect the random nature of objectivity of the selection process.
>
> That the introduction of personal predilections of prospective jurors affects the random nature of the selection process

4. Section 1867 prescribes that in a criminal case the defendant must move to dismiss the indictment for a substantial failure to comply with the provisions of the Act before voir dire examination begins or within seven days after the defendant discovers or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, and that such motion must contain a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of the Act. 28 U.S.C. § 1867(a) & (d). Whereas relief was denied in *Kennedy* because the defendant failed to comply with these procedural requirements, the defendant in the instant case has timely filed a proper motion accompanied

by the required sworn statement. Accordingly, the procedural impediments barring relief in *Kennedy* are of no consequence here.

5. The Fifth Circuit, in *Kennedy,* erroneously referred to section 1867(a) as authority to dismiss the indictment. This Court would note that section 1867(d) provides that a substantial failure to comply with the Act warrants dismissal of the indictment only with regard to the impanelling of a grand jury. Where the error occurs in the selection of a petit jury, as in *Kennedy,* the relief appears only to be a stay of the proceedings until a jury may properly be selected. See 28 U.S.C. § 1867(d).

cannot be gainsaid. Surely a district would be in substantial violation of the statute if it selected all its jurors by randomly drawing names from the qualified jury wheel and allowing those selected to opt in or out at will. Limiting such a policy to emergency shortages does not mitigate its nonrandom nature.

We need not speculate as to what sort of biases will be reflected in a jury chosen on the basis of its members' willingness to depart from their daily business and serve as jurors. It is enough to recognize that a substantial variable, not contemplated by the Act's few, narrow categories of qualifications, exemptions, and excuses, has confounded the selection process.

548 F.2d at 611–612 (footnote omitted). The Court added that the litigant need not show prejudice in establishing a "substantial failure to comply" with the Act as this requirement was deleted from the bill presented to the conference committee. Id at 612. See H.R.No.1076, 90th Cong., 2d Sess. (1968) reprinted in [1968] U.S.Code Cong. & Ad.News, 1792, 1806.

Moreover, when a statutory violation directly affects the random nature of the selection process, there is no need to show that the violation tended to exclude some recognizable group from that process. Congress did not simply outlaw certain disparities in representation of certain groups on juries; it designed a procedure of random selection to ensure that no such disparities would arise. A departure from the statutory scheme that directly affects the random nature of selection establishes a substantial violation independently of the departure's consequences in a particular case.

548 F.2d at 612 (footnote omitted). The Court thus concluded:

Providing prospective jurors with complete discretion whether or not to serve negates the statutory mandate of random selection. The practice of the district court amounted to a "substantial failure to comply" with the Act. Accordingly, had appellant properly preserved his objection to the practice, he would have clearly been entitled to relief.

548 F.2d at 612.

Although *Kennedy* dealt with a district court's selection of a petit jury, the language of the Act is such that this Court determines the reasoning in *Kennedy* is both applicable and controlling in the instant case. The use of volunteers in the instant case detracted from the random nature of the grand jury selection process in that it allowed individuals to "opt in . . . at will." It is of no moment that the pool of potential grand jurors was itself selected at random. As the *Kennedy* court observed, "former purity cannot randomize what has become unrandom." The Court need not inquire into the potential biases of a partially volunteer jury but notes that in contrast to a challenge to a petit jury, whatever biases may exist in such an instance would be foreclosed from voir dire examination in a grand jury context.

The Court sees little merit to the United States' two arguments. First, it is beyond doubt from a reading of the transcript and the affidavits that volunteers were chosen for service on the grand jury in this instance.[6]

Second, the Government's reliance on *United States v. Anderson*, 509 F.2d 312 (D.C. Cir. 1974), cert. denied, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975), is misplaced. *Anderson* involved a constitutional challenge under the Due Process clause of the Constitution, not a challenge to jury composition under the statutory requirements of 28 U.S.C. § 1861 et seq. In *Kennedy* the Court noted this difference and distinguished between the defendant's statutory and his constitutional rights. Whereas the Act guarantees a defendant a randomly selected jury, the Due Process clause merely guarantees that a jury must be drawn from a "fair cross section of the community." 548 F.2d at 614. In noting the constitutional nature of the holding of *Anderson*, the Fifth Circuit in *Kennedy*

---

**6.** As there is no doubt on this factual point the need for an evidentiary hearing is obviated.

demonstrated that the use of volunteers constitutes a clear violation of the Act while at the same time passing Due Process muster. Compare 548 F.2d at 609–612 with 548 F.2d at 614.

■ As the defendant in the instant case bases his claim entirely on the requirements of the Act, the constitutional aspects of the *Anderson* case are simply inapposite. Moreover, the Court of Appeals in *Anderson* stated specifically that the trial court's action in *Anderson* was not an appeal for volunteers but was merely a method to eliminate what would have been a tedious process of examining one by one a large group who would seek to be excused from serving on a petit jury for a considerable period beyond the time for which they had been summoned to serve. 509 F.2d at 322. In the instant case, the Court had already engaged in such a hardship inquiry. The request for volunteers in the instant case was a separate and subsequent action which the Court of Appeals in *Kennedy* held to be a "substantial failure to comply" with the Act's mandate of random selection. The authorities cited by the Government simply do not grant to a district judge the discretion to allow volunteers to serve on the grand jury.

The Court is satisfied that the decision of the Fifth Circuit in *United States v. Kennedy*, supra, controls the disposition of this case. Accordingly, as the Court agrees that the use of volunteers in the composition of the grand jury panel which returned the indictment against the defendant in the instant case constitutes a "substantial failure to comply" with the Act, the indictment must be and it is hereby DISMISSED pursuant to the dictates of Section 1867(d) and *United States v. Kennedy*, supra.

And it is so ORDERED.