**CIRCUIT COURT OF ALBEMARLE COUNTY**

Bricker

v.

Carole Miller et al.

March 7, 2002

Case No. (Law) CL008512

BY JUDGE PAUL M. PEATROSS, JR.

Plaintiff Bricker filed a Motion for New Trial after a jury returned a verdict in favor of defendants Carole Miller, R.N., and the Commonwealth of Virginia, at the close of trial in November 2001. Plaintiff moves for a new trial on two grounds, irregularity in the jury list and violation of the Uniform Pretrial Scheduling Order. The Court received memoranda from all parties and heard argument on plaintiff's Motion on March 1, 2002. After taking the matter under advisement, the Court now denies plaintiff's Motion for a New Trial on all grounds.

*Statement of Facts*

A. *The Jury*

On September 13, 2001, the Clerk of Court, Shelby J. Marshall, selected from the master list under the supervision of the judge 125 jurors by random selection to be used for trial of civil and criminal cases for the October Term of Court beginning October 1, 2001. Those 125 jurors were shown on a list received by the Court as Plaintiff's Exhibit # 1.

On October 1, 2001, at 2:00 p.m., the Court held an orientation for the 125 jurors summoned. The Court announced to the group that everyone had to be assigned six days for jury service during the term. After initial information and instructions were given, the Court first filled the five day civil trial scheduled for the week of November 5, 2001. This was accomplished by asking those jurors whose schedules permitted to raise their hands to agree to serve on the five-day civil trial and one additional day for a total of six days of assigned jury duty. When the Court filled the required number of twenty-four jurors needed for the five-day trial, additional hands had been raised but were not recognized or asked to serve on the five-day trial. Instead, the Court went on to fill other jury trial dates, assigning six dates to all remaining jurors present. The only exceptions were those jurors excused for cause, such as being over seventy, having a medical excuse, or other statutory exemption.

The information contained in the affidavit of Barbara S. Selby, one of the jurors for the October Term, attached as Plaintiff's Exhibit # C to the Memorandum of Law, was also received into evidence for purposes of the post-trial motion.

It was stipulated at the hearing of March 1, 2002, that the 125 term jurors were randomly selected. It was also agreed that the panel of thirteen jurors plus three alternates was randomly selected on the day of trial, November 5, 2001.

## B. *The Pretrial Scheduling Order*

The Court entered a Uniform Pretrial Scheduling Order in this case on December 13, 2000. The Order provided that the parties were to exchange a list of witnesses:

> proposed to be introduced at trial. Any exhibit or witness not so identified and filed will not be received in evidence, except in rebuttal or for impeachment or unless the admission of such exhibit or testimony of the witness would cause no surprise or prejudice to the opposing party and the failure to list the exhibit or witness was through inadvertence.

At trial, the defendants called as their first witness James Bates, a private detective who had prepared a surveillance videotape of the plaintiff. Plaintiff's counsel objected that Mr. Bates was not listed on the witness list. (Transcript Nov. 7, 2001, pp. 4-5.) However, the Court permitted Mr. Bates to testify over

plaintiff's objection upon assurances by defense counsel that Mr. Bates was an impeachment and rebuttal witness. (Transcript p. 5.)

Mr. Bates' testimony consisted of his narrating his videotape and showing it. The videotape was played first for the Court and counsel outside the presence of the jury. (Transcript, pp. 7-11.) After the tape was viewed, the Court asked "Okay. So we are ready to bring the jury back to show the film?" (Transcript p. 12.) Plaintiff's counsel replied "We have no objection to showing the film. . . ." (Transcript p. 12.)

## Discussion

A. *There Were No Jury Irregularities*

1. *Section 8.01-355 Does Not Require "Random Selection"*

Plaintiff claims that the Court violated § 8.01-357 of the Code of Virginia Annotated, which states:

> On the day on which jurors have been notified to appear, jurors not excused by the court *shall be called in such manner as the judge may direct* to be sworn on their voir dire until a panel free from exceptions shall be obtained. *The jurors shall be selected randomly.*

Va. Code Ann. § 8.01-357 (Michie 2001) (emphasis added). Plaintiff claims that the Court, by asking for volunteers, did not select jurors randomly and, hence, did not obey the statute.

Plaintiff incorrectly seeks to apply the "random selection" requirement of § 8.01-357 to the stage of jury selection governed by § 8.01-355. While § 8.01-357 does·require random selection, this Code section only applies to the selection of the jury panel on the day of trial. In the present case, 24 jurors appeared on the morning of the trial, and 13 jurors were impaneled and sworn on their *voir dire*. It is this stage of the jury selection process that is governed by § 8.01-357, and it is undisputed that the 13 jurors impaneled for this case were "randomly selected" by the court.

Plaintiff's complaint about the jury selection process deals with the prior selection of the 24 jurors from the pool of 125 term jurors who appeared on Oct. 1, 2001. This stage of jury selection is governed by § 8.01-355, which provides that "the judge shall direct the selection of as many jurors as may be necessary to appear for the trial of this case. Any court shall have the power to discharge persons summoned as jurors therein, or to dispense with their

attendance on any day of its sitting." Va. Code Ann. § 8.01-355 (Michie 2001). Unlike § 8.01-357, § 8.01-355 does not require that the jurors summoned for a trial be selected randomly from the group of term jurors. Moreover, the statute gives the Court the discretion to discharge persons to be summoned for a trial or to dispense with their attendance for any given trial. Therefore, in selecting the group of 24 jurors on October 1, the Court was properly exercising its discretion, under § 8.01-355, to discharge or dispense with the attendance of people who could not sit for five days.

Plaintiff moves the Court for a new trial pursuant to § 8.01-352(A), which allows a party to object to jury irregularity *after the jury is sworn in only with leave of the court.* Va. Code Ann. § 8.01-352(A) (Michie 2001). Section 8.01-352(B) states that a new trial shall not be granted "unless it appears that the irregularity was intentional or that the irregularity or disability be such as to probably cause injustice . . . in a civil case to the party making the objection." *Id.* Plaintiff alleges that the irregularity was both intentional and the probable cause of injustice due to the fact that the Court's selection method allegedly created a disproportionate number of older, unemployed jurors. Hence, not a jury of plaintiff's peers, forcing plaintiff to exercise her strikes on a panel of jurors outside of her age and employment "group." (Plaintiff's Memo Supporting Motion for New Trial p. 8.) Before the Court decides whether its selection process was intentional or injurious to the plaintiff, the Court must first decide whether an irregular jury was ever created.

2. *Asking for Volunteer Jurors to Fill Certain Trial Dates Does Not Create an Irregular Jury*

Although Virginia case law does not reach the issue that the Court is presented with, the federal circuits have considered similar "volunteer" juries and so may provide guidance in this area. In *United States v. Anderson,* 509 F.2d 312 (D.C. Cir. 1974), cert. denied, 420 U.S. 991, 95 S. Ct. 1427 (1975), the trial judge, anticipating a long criminal trial, asked a group of 200 to 300 summoned jurors how many of them would be able to serve beyond the normal expiration of their term. *Id.* at 321. The jurors were told that a trial starting October 30 might require two weeks, but neither the case nor its subject matter was revealed. Sixty-eight of the jurors "volunteered" for the trial, and the judge called 60 of them to serve as the panel from which the jury was chosen. See *id.* 509 F.2d 312.

The defendant objected[1] to the jury of volunteers, claiming that the panel was not representative of the community but instead was composed of "volunteers who expressed their desire to serve — people who had no responsibilities which would be seriously impaired by their absence from their normal routines for a period of several weeks." *Id.*, 509 F.2d 312. The United States Court of Appeals for the District of Columbia Circuit disagreed, holding that neither the trial jury nor the panel became anything less than a fair cross section of community residents by reason of the technique the judge employed. See *id.*, at 322. The court did not view the trial judge's methodology as an appeal for volunteers but rather saw the judge's actions as an effort to avoid imposing an unnecessary burden upon jurors who could not serve for such a long period of time. See *id.*, 509 F.2d 312. The court concluded by stating:

> Certainly the judge would have been justified in excluding any of those in the 200 odd category who might individually have shown undue hardship, even during the term of regular service. Here the endeavor was to eliminate the tedious process of examining one by one the obviously large group who would seek to be excused for that reason.

*Id.*, 509 F.2d 312.

In *United States v. Branscombe*, 529 F. Supp. 556 (E.D. Va. 1982), the defendant, after being indicted by a grand jury for tax evasion, moved to quash the indictment due to the alleged use of an irregular method of impaneling jury members which violated the Jury Selection and Service Act of 1968. *Id.*, at 557. In particular, the defendant objected to the facts that the court, when selecting a panel from the summoned group of potential grand jurors, asked whether anyone wished to be excused from jury duty because it was too burdensome for him, after which the court excluded these members. See *id.*, 529 F. Supp. 556. The court then asked whether any of the group particularly wished to serve on the jury, which resulted in five jurors responding affirmatively. See *id.*, 529 F. Supp. 556. The court then impaneled a grand jury of the five volunteers and one other juror who had no excuse to avoid jury duty. See *id.*, 529 F. Supp. 556. The defendant objected to this method of impaneling, claiming that the Jury Selection and Service Act of

---

[1] It is unclear whether or not defendant objected "timely" to the jury irregularity, but the court dismisses the inquiry due to the fact that the "[plaintiff's] point [was] substantively deficient." *Id.* at 321.

1968 required juries be "selected at random from a fair cross section of the community." *Id.*, 529 F. Supp. 556 (citing Jury Selection and Service Act of 1968, Pub.L.No. 90-274, 82 Stat. 53, as amended, 28 U.S.C. § 1861 et seq.)

The United States District Court for the Eastern District of Virginia agreed with the defendant in *Branscombe* and found that the method of selection utilized by the court "effectively added another qualification for jury service" in addition to the statutory qualifications[2] delineated in the Act. *Id.*, at 559. Consequently, some of the potential jurors who were otherwise qualified but who failed to volunteer were excluded from service. See *id.*, 529 F. Supp. 556. The court noted that:

> it seems self-evident that allowing people to decide whether they wish to perform a particular task is quite the opposite of randomly selecting those who, unless within narrow and objectively determined categories of exemptions and excuses, must perform the task. A volunteer is not a random selectee.

*Id.* at 560, (quoting *United States v. Kennedy*, 548 F.2d 608, 611 (5th Cir. 1977)).

The plaintiff in *Branscombe* attempted to justify the court's volunteer selection system by relying on *Anderson*, but the *Branscombe* court found the facts of *Anderson* were distinguishable. Namely, the *Branscombe* court did not view the trial court's action in *Anderson* as an appeal for volunteers. *Id.*, at 562. Instead, the trial judge in *Anderson* was merely using a method "to eliminate what would have been a tedious process of examining one by one a large group who would seek to be excused from serving on a petit jury for a considerable period beyond the time for which they had been summoned to serve." *Id.*, 609 F.2d 312. Whereas in *Branscombe*, the court had already made a hardship inquiry, the subsequent request for volunteers was a separate and subsequent action and thus, was a substantial failure to comply with the Act's mandate of random selection. *Id.*

Unlike the request for volunteers made by the trial court in *Branscombe*, the request made in the case at hand was not a request made for the purposes of selecting only "volunteer" jurors and dismissing all others from service. The Court, in asking for volunteers for a five-day trial, was not dismissing any potential jurors but was instead merely trying to accommodate jurors with convenient jury duty dates that would fit each juror's personal schedule. Jurors

---

[2] Such as citizenship, age, residence, etc. See *id.*, 529 F. Supp. at 558.

who did not volunteer for this specific period of jury duty were still required to serve another six days at some other point during the term. As the *Anderson* court noted, a judge can certainly question each juror one by one and ask him or her if the five-day trial will work with his or her schedule, but it is much more efficient to tell the jurors what dates are needed and ask for volunteers. And, as the court in *Anderson* clearly recognized, such a method of selecting jurors does not create an irregular jury or violate the process of random selection.

*3. Even If the Court Were to Find That the Method of Selecting Jurors Did Create an Irregular Jury, the Irregularity is Not a Sufficient Cause for Granting Plaintiff's Motion for New Trial Because the Irregularity Is Not "Intentional" under Virginia Law*

As noted above, § 8.01-352 allows a party to object to an irregular jury after the jury has been sworn in only if the objecting party proves the irregularity was intentional or caused probable injury. Plaintiff argues that the Court did not follow statutory requirements for impaneling a jury, and, under current Virginia law, failure to select jurors according to statutory requirements results in an intentional violation. See *Harmon v. Commonwealth*, 212 Va. 442, 444, 185 S.E.2d 48, 50 (1971). The trial judge in *Harmon* failed to adhere to the statutory requirements in place at the time for summoning jurors to serve on defendant's criminal trial. See *id.*, at 443. Virginia statutes required that the writ of venire facias issued in a felony case contain a certain number of prospective jurors. Code of Virginia of 1950, §§ 19.1-196, 19.1-198, 19.1-199, 19.1-201. The trial judge in *Harmon* violated this requirement by issuing two defective writs. The first writ did not indicate the number of prospective jurors to be summoned by the sheriff serving the writ, and the second writ ordered the sheriff to summon ten persons more than the statute prescribed. See *id.*, at 444. The defendant objected that the jury was irregular and the prosecution argued that the irregularity was harmless because defendant failed to show that the irregularity was intentional or the probable cause of injustice as the statutes required.[3] See *id.* After noting that "there [was] no order in the record . . . showing good cause for [the irregular actions by the trial judge]," the Virginia Supreme Court disagreed with the prosecution and held that "the issuance of writs of venire facias different from what the law prescribes is an intentional irregularity and not within the curative provisions of the statute." *Id.*

---

[3] Va. Code § 19.1-201.

Plaintiff in the present matter argues that *Harmon* stands for the notion that any variance from statutory requirements resulting in an irregular jury is considered "intentional" under Virginia law. However, the *Harmon* court only found an intentional irregularity after specifically pointing out the lack of "good cause shown" for ignoring the statutory requirements. It is clear that the Court in the present matter only varied from statutory requirements (if at all) for the purpose of allowing prospective jurors to match their personal schedules to the specific needs of the Court. This is not a sufficient basis to conclude that the Court intentionally created an irregular jury.

### 4. Plaintiff Has Failed to Prove "Probable Injustice"

Plaintiff argues that the irregularity in her trial jury "probably caused injustice" as required for a new trial under § 8.01-352 due to the fact she was forced to use her strikes on a panel heavily weighted toward jurors "neither employed nor within her age group." (Motion for New Trial p. 8.) In support of her argument, plaintiff submits statistical evidence to the Court to show that her jury panel of twenty-four contained an unusually high number of retired jurors and jurors over the age of sixty-five. Based on the number (14) of retired potential jurors in the pool of 125, plaintiff claims the probability of getting 7 jurors on her panel of 24 is .0057, or 57 times out of 10,000 random attempts. Plaintiff cites no Virginia case law to support the claim that she was probably injured.

However, in virtually all of the cases discovered outside of the Commonwealth, courts have held that an alleged underrepresentation of persons within certain age groups in jury venires, resulting from their omission by jury selection personnel due to the asserted hardship that jury duty would entail for such persons or their unavailability for jury service, did not violate the defendants' constitutional rights. See generally *United States v. Diggs*, 522 F.2d 1310 (App. D.C. 1975) (denying defendant's motion after holding that alleged statistical underrepresentation of jurors under age thirty was not due to purposeful exclusion but rather was due to the fact that most potential jurors in that age group were excused due to military service, caring for young children, practical nursing, and college); *United States v. Leonetti*, 291 F. Supp. 461 (S.D. N.Y. 1968) (refusing to find violation of constitutional rights where overbalance of jurors in the jury selection system toward older age groups resulted from hardship excuse procedures and not from a systematic exclusion of such persons); *State v. Porro*, 385 A.2d 1258 (N.J. Super. 1978); *Bowens v. State*, 309 So. 2d 844 (Ala. App. 1974); *People v. Pinell*, 43 Cal. App. 3d 627 (1st Dist. 1974) (holding that statistical proof of 15.4% underrepresentation of

jurors age 21 to 30 was not due to improper discrimination but rather due to the fact that such jurors were typically excluded on proper grounds of educational, family, or financial hardship); *State v. Holmstrom*, 168 N.W.2d 574 (Wis. 1969).

In summary, where challenges have been made to jury panels based on an underrepresentation of younger people, courts have rejected claims by defendants that such juries caused them constitutional injuries. Instead, courts have generally viewed such shortages in the number of younger jurors as the inevitable result of increased hardships faced by younger jurors. While plaintiff in the case at hand may very well have received a jury composed of statistically older jury members than the make-up of the jury pool would have suggested, plaintiff has failed to show how this statistical inconsistency translates into a probable injury. Plaintiff does not claim nor does she offer any proof that the "older" jury members were biased against the plaintiff due to her relatively young age. There is no evidence to suggest that a different jury (one composed of younger jurors) would have reached a different verdict. Also, plaintiff had the opportunity to fully question all of the "older" jurors during *voir dire* to discover if any were prejudiced against the plaintiff due to her relatively young age. Because plaintiff cannot prove that a statistically older jury deprived her of a constitutional right or otherwise affected the outcome of the case, plaintiff was not "probably injured" by any irregular jury selection procedure utilized by this Court.

The Court received Mr. Murray's letter of March 5, 2002, referencing *First Bank & Trust Co. v. Commonwealth Transportation Commissioner* and read the case. The case is not applicable because § 8.01-352 governs a motion for a new trial and, under § 8.01-352, the plaintiff must prove the irregularity was intentional or probably caused injustice to the plaintiff.

## II. *The Pretrial Order Was Not Violated*

Plaintiff argues that the Court violated the Uniform Pretrial Scheduling Order by admitting the testimony and surveillance videotape of James Bates. According to the plaintiff, Mr. Bates' videotape and corresponding testimony did not present any evidence that contradicted or impeached the plaintiff or any of her witnesses. Therefore, Mr. Bates cannot be considered a rebuttal or impeachment witness and, consequently, should not have been permitted to testify because he was not included on the defendants' witness list pursuant to the pretrial order.

Plaintiff's argument has no merit. To begin with, although plaintiff initially objected to Mr. Bates as a witness whose name did not appear on

defendants' witness list (Transcript excerpt Nov. 7, 2001, pp. 4-5), there was never any clear objection that Mr. Bates' testimony was not rebuttal or impeachment. In fact, before the tape was shown to the jury, plaintiff's counsel responded "We have no objection to showing the film." (T. p. 12.) Also, contrary to the plaintiff's claims, the Court finds that Mr. Bates' videotape clearly contradicted evidence put forth by the plaintiff regarding the use of her injured left arm. The video, for example, depicted the plaintiff draping grocery bags over her injured arm and using her arm to shut her car door; activities which the plaintiff's evidence suggested were not possible. Because Mr. Bates' testimony was impeachment, defendants had no duty to include him on their witness list, and the Court did not violate the pretrial order by admitting his testimony.

## Conclusion

For the reasons stated above, the Court holds that it neither created an irregular jury nor violated the Uniform Pretrial Scheduling Order. Plaintiff's Motion for a New Trial is denied on both grounds.