UNITED STATES of America, Plaintiff,

v.

Fern A. CARON, Defendant.

Crim. A. No. 82–00087–01.

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 2, 1982.

Justin W. Williams, U.S. Atty., Alexandria, Va., N. George Metcalf, Asst. U.S. Atty., Richmond, Va., for plaintiff.

Plato Cacheris, Larry S. Gondelman, Hundley & Cacheris, P.C., Washington, D.C., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Defendant is charged in a four-count indictment with perjury and obstruction of justice. In connection therewith, he has filed numerous motions seeking dismissal. Having heard the arguments of counsel for the government and the defendant, the Court will address the motions *seriatim:*

I. *Motion to Dismiss the Indictment on the Ground of Defective Grand Jury*

In support of his motion to dismiss the indictment, defendant contends the grand jury before which he allegedly perjured himself was "incompetent," and, accordingly, any false testimony given to such grand jury could not constitute perjury. For essentially the same reason, defendant asserts

his actions could not constitute obstruction of justice.

Defendant's contention that the grand jury before which he testified, though not that by which he was indicted, was incompetent is purportedly founded upon the ruling of the Court in *United States v. Branscome,* 529 F.Supp. 556 (E.D.Va.), *aff'd,* 682 F.2d 484 (4th Cir.1982), that an indictment returned by that grand jury had to be dismissed due to a substantial failure to comply with the Jury Selection and Service Act of 1968 ("the Act") in the empanelling of the grand jury.

As defendant reads the *Branscome* opinion, "the defect in the selection of the grand jury rendered it a nullity. In essence, it had no authority to do anything." Defendant concludes therefrom that any false testimony given before a grand jury so tainted could not amount to perjury.

Challenges to the composition of a grand jury may be asserted under the Act or on constitutional grounds. In the case at bar, defendant apparently raises his challenge only under the statute. Noting the uniqueness and substantiality of the question presented by these facts, however, the Court has also considered the possible ramifications of the grand jury taint from a constitutional perspective.

▪ The determination as to whether the Act requires dismissal of the instant indictment turns entirely on the question whether defendant has standing under the Act to challenge the grand jury before which he testified. The *Branscome* decision conclusively established that the grand jury in question was empanelled in substantial noncompliance with the Act. 529 F.Supp. at 562. Accordingly, if defendant is within the narrow class of litigants contemplated by the Act, the indictment must be dismissed, for defendant need not demonstrate prejudice in order to prevail on his challenge; rather, a showing of a substantial failure to comply with the requirements of the Act is all that is necessary. *See United States v. Rodriquez,* 588 F.2d 1003, 1009 (5th Cir.1979); *United States v. Jenison,* 485 F.Supp. 655, 659 (S.D.Fla.1979).

In determining whether defendant has standing to challenge the method by which the grand jury was empanelled, it is to the language of the relevant statute, 28 U.S.C. § 1867(a), that the Court first refers:[1]

In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

Defendant argues that the language of the statute does not strictly limit the statutory remedy to challenges by a defendant against the indicting grand jury. Defendant further contends the policy declaration of the Act as set forth in 28 U.S.C. § 1861 indicates a broad congressional intent to afford "all litigants" a randomly selected jury. The only qualification on this entitlement, defendant asserts, is that the litigant be one entitled to trial by jury. From all of this, defendant concludes he, as a litigant entitled to trial by jury, has standing to challenge the composition of a grand jury before which he appeared as a witness, notwithstanding the fact that the instant indictment was returned against him by another grand jury, the composition of which he does not challenge. Finally, defendant contends "[t]he plain language of sections 1861 and 1867 permits a defendant to challenge the composition of any grand jury related to his case."

■ As an initial matter, the Court cannot agree that the language of §§ 1861 and 1867 affords a defendant the right to challenge "any grand jury related to his case." To the contrary, in the Court's view, the common-sense impression engendered by those sections is that a criminal defendant is entitled to challenge the composition of the grand jury which returned the indictment. While § 1867(a) is not endowed with an overabundance of clarity, the language suggests the availability of a challenge to the composition of a grand jury is limited to criminal defendants who have been indicted by that grand jury. This reading derives from that portion of the statute which states: "[T]he defendant may move to dismiss the indictment ... on the ground of substantial failure to comply with the provisions of this title in selecting *the* grand or petit jury." [Emphasis added.] In eschewing the use of the terms "*a* grand jury" or "*any* grand jury" in favor of "*the* grand jury," Congress apparently intended to limit grand jury challenges to those made by a "criminal defendant" to "the grand jury" that indicted such defendant. This conclusion is, of course, directly contrary to defendant's unsupported assertion that he has standing under § 1867 to challenge "any grand jury related to his case"; the Court, however, can discern no support for defendant's contention in the language or purpose of the statute, or in the case law.[2]

1. The Court's research discloses that the precise question whether a criminal defendant has standing under 28 U.S.C. § 1867(a) to challenge the composition of a grand jury which did not indict the defendant is one of first impression. The only judicial comment the Court has found regarding this question generally appears in the opinion of the District Court in *In re Archuleta,* 432 F.Supp. 583 (S.D.N.Y. 1977):

> The defendant or Attorney General in any criminal case may challenge the array of the grand jury *which brought the indictment*
> . . . .

*Id.* at 592 (emphasis added). Although this Court reaches the same conclusion, *Archuleta* cannot be viewed as authoritative on this point for several reasons. For one thing, the state-

ment quoted just above is clearly dictum. Also, although this statement appeared in a discussion of both the constitutional and statutory bases for challenges to grand juries, it does not appear the Court was, in this context, interpreting the language of § 1867(a).

2. The cases cited by defendant do not support the proposition asserted. Specifically, *United States v. Flood,* 394 F.2d 139, 141 (2d Cir.1968), merely reaffirms the established principle that a grand jury witness "cannot impede collection of evidence by the grand jury even though the issues he seeks to raise could be later litigated—perhaps with success—by an indicted defendant." The opinion in *Flood* does not discuss the question whether a grand jury witness has standing under the Act to challenge the

The policy reasons supporting the Court's reading of the statute are evident. It may reasonably be inferred that Congress, in enacting the Act, was attempting to prevent systematic exclusion of racial, ethnic, or religious minorities from jury service by constructing a statutory scheme designed to ensure random selection of juries from a fair cross section of the community. *See United States v. Maskeny,* 609 F.2d 183, 191 (5th Cir.), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980); *United States v. Manbeck,* 514 F.Supp. 141, 144 (D.S.C.1981). The Act is rather clearly designed to accommodate the equal protection concerns presented as these minority groups have been systematically underrepresented or excluded from grand and petit juries. These concerns overlap, of course, with the principle of being judged by one's peers. This principle and its attendant equal protection ramifications do not come into play where the jury being challenged neither indicted nor tried the defendant making the challenge. Accordingly, the Court concludes neither the language nor the purposes of the Act require that a defendant be found to have standing to challenge the composition of a grand jury which neither indicted him nor took any other action against him.[3]

■ Having concluded that the defendant lacks standing under the Act to challenge the method by which the grand jury was selected, the Court turns to the question of defendant's standing to raise irregularities in the empanelling of the grand jury on constitutional grounds. Because defendant stands indicted of a criminal offense, considerations of due process dictate that he be afforded the opportunity to raise all defenses not waived. To the extent defendant's challenge to the composition of the grand jury could reveal a violation of his constitutional rights or could negate an element of the charged offense as a matter of law, defendant certainly has standing to place such matters before the Court. *See, e.g., In re Archuleta,* 432 F.Supp. 583, 589 (S.D.N.Y.), *aff'd,* 561 F.2d 1059 (2d Cir. 1977). The Court discerns no constitutional violations in this case; thus, the Court must examine the substance of defendant's contentions to determine whether they would negate an element of the offense.

■ Defendant's fundamental premise, often repeated, that the grand jury in question was "incompetent" and a "nullity" is simply incorrect, and no support for this contention is intimated in the opinions of the District and Circuit Courts in *United States v. Branscome,* 529 F.Supp. 556 (E.D. Va.), *aff'd,* 682 F.2d 484 (4th Cir.1982). Those courts merely concluded the grand jury had been selected in substantial noncompliance with the Act and, under the terms of the Act, the indictment was required to be dismissed upon motion timely made. This, of course, does not mean the grand jury was a "nullity" having "no authority to do anything," as defendant urges. Indeed, the existence of a timeliness requirement indicates any technical defects under the Act in the jury selection process are waivable, as the court held in *United States v. Kennedy,* 548 F.2d 608 (5th Cir. 1977), *cert. denied,* 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1978) (conviction affirmed where defendant failed to meet strict formal prerequisites for challenging the composition of the jury under the Act). If a defendant indicted by the tainted grand jury can be validly convicted after waiving his challenge, it cannot seriously be contended that the grand jury was a "nullity."

The question thus becomes whether the grand jury taint found to exist in *Branscome* provides a basis for dismissal of the instant indictment. In reviewing the elements of the offense with which defendant is charged, it appears the only element that

---

composition of a grand jury which did not indict him. Indeed, the Act was not in effect at the time of the *Flood* decision.

**3.** The decisional law makes clear, and defendant apparently concedes, a witness lacks standing under the statute to challenge the grand jury. *See, e.g., In re Archuleta,* 432 F.Supp. 583 (S.D.N.Y.), *aff'd,* 561 F.2d 1059 (2d Cir. 1977).

arguably could be affected by the grand jury taint is the requirement that the allegedly false declaration be made "under oath." 18 U.S.C. § 1623(a). Were defendant correct in his assertion that the grand jury was a nullity, a real question would exist as to whether defendant's grand jury oath had been vitiated.[4] As heretofore noted by the Court, however, the grand jury in question was not a nullity, and the Court cannot say as a matter of law that defendant was not "under oath."

Defendant's assertion that the grand jury was a nullity is further undermined in principle by the Supreme Court's decision in *United States v. Williams,* 341 U.S. 58, 71 S.Ct. 595, 95 L.Ed. 747 (1951). In *Williams,* the defendants allegedly perjured themselves in a proceeding over which the District Court later found it had no jurisdiction. On the basis of this jurisdictional finding, the District Court concluded the indictments for perjury had to be dismissed. The Supreme Court reversed, stating:

> Here, however, we have a federal statute enacted in an effort to keep the course of justice free from the pollution of perjury. We have a court empowered to take cognizance of the crime of perjury and decide the issues under that statute. The effect of the alleged false testimony could not result in a miscarriage of justice in this case but the federal statute against perjury is not directed so much at its effects as at its perpetration; at the probable wrong done the administration of justice by false testimony. That statute has led federal courts to uphold charges of perjury despite arguments that the federal court at the trial affected by the perjury could not confer a valid judgment due to lack of diversity jurisdiction, or due to the unconstitutionality of the statute out of which the perjury proceedings arose.

Where a federal court has power, as here, to proceed to a determination on the merits, that is jurisdiction of the proceedings. The District Court has such jurisdiction. Though the trial court or an appellate court may conclude that the statute is wholly unconstitutional, or that the facts stated in the indictment do not constitute a crime or are not proven, it has proceeded with jurisdiction and false testimony before it under oath is perjury.

*Id.,* 341 U.S. at 68–69, 71 S.Ct. at 600–601 (footnotes omitted).

■ The situation in *Williams* parallels that in the instant matter in certain pertinent respects. Irrespective of the fact that the *Branscome* grand jury was found to be tainted subsequent to defendant's rendering of the alleged false declarations, at the time defendant testified, the grand jury was in the process of administering justice, a constituent part of which was the administering of an oath to the defendant. The fact that the grand jury was later found to have been constituted in violation of the Act does not vitiate the oath or negate the alleged falseness of the testimony. To conclude otherwise would be in contravention of the plain language of *Williams* as set forth above. It follows then that it is specious to contend here that the taint of the *Branscome* grand jury voids defendant's testimony before that grand jury.

Defendant similarly contends his conduct before the grand jury could not constitute obstruction of justice because an "incompetent" grand jury could not have been "duly empanelled" or "administering justice." The Court's conclusion above that the grand jury was not incompetent or a nullity disposes of the contention.

In summary, having concluded defendant lacks standing under the Act to challenge

---

4. The Court has found no federal cases examining the precise question here presented. In a closely analogous context arising in the courts of the State of New York, however, the court stated the following:

> Although defendant *may* have successfully contested an *indictment* returned against him by the 1973 grand jury, the alleged illegal composition of that body in no manner affected its right lawfully to administer an oath to him or receive testimony from him nor did its actions in any manner prejudice defendant [citation omitted] nor deprive him of his constitutional rights.

*People v. Skibinski,* 55 A.D.2d 48, 389 N.Y.S.2d 693, 695 (1976) (emphasis in original).

the composition of a grand jury which took no action against him, finding the grand jury in question was not a nullity, and discerning no violations of defendant's constitutional rights in the selection of the grand jury, the Court concludes defendant's Motion to Dismiss the Indictment on the aforestated grounds must be denied.

II. *Motion to Dismiss the Indictment for Failure to State an Offense*

A. Defendant also moves to dismiss counts three and four of the indictment (the obstruction of justice charges) on two grounds. First, because he was testifying under a grant of "use" immunity, defendant relies on the language of 18 U.S.C. § 6002 for the proposition that testimony given under such a grant of immunity can be used only in a prosecution "for perjury, giving a false statement, or otherwise failing to comply with the order." In other words, the statute specifies the offenses in whose prosecution the (allegedly false, immunized) testimony may be used, and obstruction of justice is not among them. Second, defendant contends the mere rendering of false testimony does not also constitute obstruction of justice.

In response to the first claim, the government asserts the language of 18 U.S.C. § 6002 does not preclude prosecuting the defendant for the obstruction of justice embodied in his alleged making of false declarations. To rebut the second claim, the government cites case authority as squarely holding that the giving of perjurious statements may form the basis for an obstruction of justice prosecution.

The Court addresses the second contention first. The two circuit courts of appeals

that have directly addressed the question whether the rendering of false testimony[5] can also constitute obstruction of justice, the Fifth and Sixth Circuits, have reached facially contrary conclusions.[6] These differing results apparently stem from different perceptions of the purpose and scope of the obstruction of justice statute in question, 18 U.S.C. § 1503. As noted by the Fifth Circuit Court of Appeals in *United States v. Griffin,* 589 F.2d 200 (5th Cir. 1979), § 1503 is composed of two parts: a specific enumeration of types of proscribed activity and an "omnibus" clause describing the activity in general terms.

> The first portion of the statute prohibits the influencing, intimidation, or impeding of any witness, juror, or court official. The concluding clause of the statute penalizes anyone who "corruptly ... endeavors to influence, obstruct, or impede, the due administration of justice."

589 F.2d at 202–03. Relying on its previous decision in *United States v. Howard,* 569 F.2d 1331 (5th Cir.1978), the Court rejected the argument that the general language of the concluding clause of the statute has no broader reach than the more specific language of the first portion. The Court reasoned, as it had in *Howard,* that the restrictive reading of the statute urged by the appellant would render the omnibus clause, that is, the concluding clause, superfluous. *Griffin,* 589 F.2d at 203; *accord, United States v. Walasek,* 527 F.2d 676, 679 (3d Cir.1975). The *Griffin* court thus concluded the most natural construction of the omnibus clause is that it prohibits acts that are similar in result, rather than manner, to the conduct described in the first part of the statute. *Griffin,* 589 F.2d at 203.

---

5. The Court has used the terms "false declarations," "false testimony," "false swearing," and "perjury" interchangeably throughout this memorandum. The Court is, of course aware that these offenses may be prosecuted under different statutes, *compare* 18 U.S.C. § 1621 *with* 18 U.S.C. § 1623(c)(2); however, the distinctions among the various statutes do not affect the principles here in issue.

6. The government asserts the Fifth Circuit and the Second Circuit are in agreement on this point. In *United States v. Griffin,* 589 F.2d 200 (5th Cir.1979), the Court did to some extent

rely on *United States v. Cohn,* 452 F.2d 881 (2d Cir.1971), *cert. denied,* 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972). However, the indictment in *Griffin* alleged only that the defendant gave false testimony, whereas in *Cohn,* the indictment additionally charged the defendant with giving evasive testimony, which more clearly obstructs a grand jury's investigation than does false testimony. Nevertheless, the analysis employed in *Cohn, see* 452 F.2d at 883–84, does lend support to the approach taken in *Griffin.*

The *Griffin* court turned to the question whether perjury can constitute "an offense against the effective administration of justice" within the meaning of the omnibus clause of § 1503. *Id.* The Court first recalled its decision in *United States v. Partin,* 552 F.2d 621, 631 (5th Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977), holding that one who conspired to induce a witness to testify falsely could be prosecuted under the omnibus clause of § 1503 because the object of such conspiracy was to obstruct justice. The *Griffin* court then reviewed its decision in *United States v. Howard* that the use of threats to prevent a grand jury witness from testifying has the result of destroying evidence, and, thus, can constitute obstruction of justice under § 1503. 569 F.2d at 1334. Simply stated then, the Fifth Circuit's conclusion is that "the omnibus clause aims at all conduct that results in an obstruction of justice." *United States v. Griffin,* 589 F.2d at 203; *United States v. Howard,* 569 F.2d at 1335; *United States v. Partin,* 552 F.2d at 631. Having so concluded, the *Griffin* court found that the giving of false testimony could likewise amount to obstruction of justice:

> Similarly, using threats or bribes to prevent a grand jury witness from testifying truthfully has the result of concealing and altering the nature of evidence. If such conduct constitutes an obstruction of the administration of justice, as we held in *Partin,* then so does testifying falsely; the result in either case is the same.

589 F.2d at 203 (footnote omitted). The Court further noted: "The perjurious witnesses can bring about a miscarriage of justice imperiling the innocent or delaying the punishment of the guilty. Thus, had Griffin's testimony been merely false, it might well have come under the terms of the omnibus clause of § 1503, nonetheless." *Id.* at 204. Finally, although the indictment in the *Griffin* case involved allegations that the defendant gave false testimony before a grand jury, the Court found any distinction between "false" testimony and "evasive" testimony immaterial to the question whether the giving of testimony of either description could constitute obstruction of justice under § 1503. "In either event," the Court stated, "the government must, and in this case, did, charge in the indictment and prove at trial that the testimony had the effect of impeding justice." 589 F.2d at 204.

Having concluded perjury may be the type of conduct proscribed by the obstruction of justice statute, 18 U.S.C. § 1503, the *Griffin* court addressed the narrower question whether perjury alone may also constitute obstruction of justice.

> Undeniably, the Supreme Court found that perjury alone does not have a necessarily inherent obstructive effect on the administration of justice. The Court made clear, however, that false testimony can amount to contemptuous conduct when added to the element of perjury there is the " 'further element of obstruction to the Court in the performance of its duty'." *In re Michael,* 326 U.S. [224] at 228, 66 S.Ct. [78] at 80 [90 L.Ed.30] [ (1945) ], *quoting Ex parte Hudgings,* 249 U.S. [378,] 383, 39 S.Ct. 337 [63 L.Ed. 656] [ (1919) ].

589 F.2d at 205. In *Griffin,* the court found this "additional element" present, concluding

> Griffin's testimony did not merely require the grand jury to ascertain the truth by resolving contradictory evidence; his denial of knowledge had the effect of closing off avenues of inquiry entirely.

*Id.* In summary then, the Fifth Circuit has concluded the omnibus clause of § 1503 is not restricted in scope by the specific language of the first portion of that statute; perjury may, under certain circumstances, be the type of conduct that constitutes an interference with the due administration of justice; and where the government pleads and proves that perjury had the effect of impeding justice, the rendering of the perjurious testimony may form the basis for a prosecution for obstruction of justice under § 1503.

Defendant cites *United States v. Essex,* 407 F.2d 214 (6th Cir.1969), as authority

contrary to *United States v. Griffin.* In *Essex,* the defendant was charged with obstruction of justice under 18 U.S.C. § 1503 as the result of her filing with the Court a false affidavit in support of a defendant's motion for a new trial in an unrelated criminal case. Having reviewed the historical antecedents of § 1503, the *Essex* court concluded, in essence, that the omnibus clause did not broaden the specific enumeration of conduct constituting obstruction of justice as set forth in the first portion of the statute. 407 F.2d at 218 ("The general clause at its end, moreover, must be read to embrace only acts similar to those mentioned in the preceding specific language."). Further, emphasizing that § 1503 is in the nature of a contempt statute, the Court viewed the question before it as whether the act of filing a false affidavit can constitute a contemptuous act within the meaning of the obstruction of justice statute, and concluded it could not.

Relying on *In re Michael* and *Ex parte Hudgings,* the *Essex* court stated that "perjury alone lacks the element of obstruction which is the essence of contempt." 407 F.2d at 218. More specifically, the Court concluded:

> Since the statute before us, 18 U.S.C. § 1503, is also a contempt statute the obstructive element, that is, impeding the court in the conduct of its business or endeavoring to do so beyond the mere rendering of false testimony, must, we believe, be alleged and proved before conviction can be had under it.

*Id.* Linking this conclusion to its narrow reading of the scope of § 1503, the Court noted the defendant was "charged with perjury and nothing more; although she may have perjured herself ... she did not endeavor to influence or interfere with 'officer[s], juror[s] or witness[es]' within the meaning of 18 U.S.C. § 1503." *Id.* Accordingly, the defendant's conviction under that statute was reversed.

■ Although the parties have characterized the holdings in *Griffin* and *Essex* as contrary to one another, and, indeed, the *Griffin* court noted the distinctions in the respective analyses, *See* 589 F.2d at 203 n. 2, 205 n. 6, the fundamental legal principles expressed in those cases do not appear necessarily irreconcilable. Both opinions conclude proof of the mere rendering of false testimony will not support a conviction under § 1503; the government must plead and prove the additional element of an impediment to the administration of justice. The cases do clearly diverge, however, on the scope of § 1503 and specifically on the effect to be given the omnibus clause thereof. Although it is, of course, well established that criminal statutes are to be narrowly construed and found to have determinate limits, it is equally fundamental that effect is to be given to all portions of a statute not irreconcilable, as Congress is presumed not to have inserted meaningless language into a statute. Accordingly, this Court concludes the omnibus clause of § 1503 must be read to proscribe conduct that impedes the administration of justice beyond those acts specifically enumerated in the first portion of the statute.

The *Essex* opinion may fairly be read to require the government to plead and prove that the defendant engaged in conduct additional to the giving of false testimony in order to show an offense under § 1503. The *Griffin* opinion, on the other hand, may be said to require only that the government plead and prove that the allegedly false testimony had the effect of impeding justice. To the extent the foregoing represents the true implications of the respective holdings, they are, of course, in conflict.

■ This Court discerns no requirement in the language of § 1503 that the government, having pleaded the facts tending to show the commission of an act that obstructed justice, must allege the commission of an additional act to state an offense under § 1503. This is, in effect, what the *Essex* opinion may be read to require. In the instant case, the indictment alleges defendant willfully endeavored to impede the due administration of justice, and sets forth the factual basis for this allegation, the same being that defendant falsely testified concerning a matter under investigation by

the grand jury. The plain language of § 1503 requires no more by way of pleading.

Having concluded the indictment is technically sufficient to state an offense under § 1503, the question becomes whether the substance of the indictment cannot state an offense as a matter of law by reason of the fact that perjury standing alone does not necessarily constitute obstruction of justice. In the Court's view, the answer is to be found in the Supreme Court's opinion in *In re Michael*, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30 (1945). There, the Court stated:

> All perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth. Therefore, it cannot be denied that it tends to defeat the sole ultimate objective of a trial. It need not necessarily, however, obstruct or halt the judicial process. For the function of trial is to sift the truth from a mass of contradictory evidence, and to do so the fact finding tribunal must hear both truthful and false witnesses. It is in this sense, doubtless, that this Court spoke when it decided that perjury alone does not constitute an "obstruction" which justifies exertion of the contempt power and that there "must be added to the essential elements of perjury under the general law the further element of obstruction to the Court in the performance of its duty." *Ex parte Hudgings, supra,* 249 U.S. at 382, 383, 384, 39 S.Ct. at 339, 340.

326 U.S. at 227–28, 66 S.Ct. at 80. Contrary to the view apparently expressed by the *Essex* court, this Court discerns no intimation in the foregoing language that a defendant accused of giving false testimony must also be accused of committing some additional act to be subject to indictment for obstruction of justice. The *Michael* opinion appears to state two relevant principles: (1) the giving of false testimony does not necessarily constitute obstruction of justice; and (2) the giving of false testimony can amount to obstruction of justice where it is shown the rendering of the false testimony has impeded the administration of justice. In other words, the government's burden on this obstruction of justice charge is not satisfied merely upon proof that defendant rendered false testimony; rather, the government must further demonstrate the rendering of such testimony thwarted or impeded the grand jury's investigation. This is what is meant by "the added element of obstruction." The Court, therefore, concludes the false declarations alleged in counts one and two of the indictment can form the basis for the obstruction of justice charges in counts three and four. Further, the Court having concluded counts three and four state an offense under 18 U.S.C. § 1503, defendant's motion to dismiss on that basis will be denied.

B. Defendant also argues the language of 18 U.S.C. § 6002 proscribes the use of his immunized testimony in this prosecution for obstruction of justice. Section 6002 provides in pertinent part:

> [N]o testimony or other information compelled under the [immunity] order ... may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

Defendant contends the statute is unequivocal in limiting the use of testimony immunized under § 6002 to prosecutions for perjury and the giving of false statements. This being so, defendant does not attack the perjury counts of the indictment (one and two) on this basis, but contends the obstruction of justice counts (three and four) thereof must be dismissed.

Defendant relies on the recent decision of the United States Supreme Court in *United States v. Apfelbaum,* 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980), in support of his position.[7] Specifically, defendant notes *Ap-*

---

7. As defendant apparently acknowledges, the question before the Court in *Apfelbaum* was whether Congress, in enacting § 6002, intended to limit the use of immunized testimony in a

subsequent criminal prosecution to permit only the use of a witness's allegedly false statements. The Court did not attempt to delineate in what types of prosecutions immunized testi-

*felbaum* recites the well-established principle of statutory construction that absent clear evidence of a contrary legislative intention, a statute should be interpreted according to its plain language. 445 U.S. at 121, 100 S.Ct. at 952. Defendant notes the statute does not use the language "obstruction of justice." Defendant further quotes the Court's references to the "perjury and false-declarations exception,"[8] *id.* at 130, 100 S.Ct. at 957, for the proposition that the Court did not intend for the exception to extend to obstruction of justice. From these statements, defendant concludes his immunized testimony cannot be used in a prosecution for obstruction of justice.[9]

Again, the precise question here presented appears to be one of first impression. In this instance, however, case authority on analogous propositions uniformly indicates the statutory construction urged by defendant is not the correct one. As noted by the government, and discussed in detail in *United States v. Tramunti,* 500 F.2d 1334, 1342–46 (2d Cir.1974), the decisions of the Supreme Court in *Glickstein v. United States,* 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911), and *United States v. Bryan,* 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1950), demonstrate that the Court has not hesitated to find or expand exceptions to the bar against the use of immunized testimony where the defendant has allegedly committed perjury or otherwise subverted the functioning of a tribunal. In *Glickstein,* the defendant was convicted of giving perjurious statements after having been granted immunity under a statute which provided, without exception, that no testimony given under a grant of immunity could be offered in evidence against the witness in any criminal proceeding. The Court affirmed the conviction, concluding a grant of immunity "does not endow the person who testifies with a license to commit perjury," and perhaps more fundamentally, "the immunity afforded by the constitutional guarantee relates to the past." 222 U.S. at 142, 32 S.Ct. at 73. Similarly, in *Bryan,* the Court found that a witness who had been automatically granted use immunity under another statute could be prosecuted for contempt of Congress notwithstanding that the statute in question provided an express exception to subsequent prosecution only for perjury. The Court again based its holding on the purpose of the immunity statute and on the fact that the protections afforded by such a statute are intended to apply only to past criminal acts. 339 U.S. at 340, 70 S.Ct. at 735.

The case at bar presents no unique circumstances justifying a departure from the principles set forth in *Glickstein* and *Bryan.* Nor has the Court found any language in *Apfelbaum* which indicates the continuing vitality of the rationale expressed in those earlier cases is now in doubt.[10] Aside from

mony could be used, and the statements quoted *infra* by defendant from the *Apfelbaum* opinion are clearly dicta as they relate to this issue.

**8.** Assuming this statement and another similar to it in *Apfelbaum* to be relevant to the instant case, the government argues the Supreme Court was using the term "false declarations" in its generic sense, and was not referring only to the false declarations statute, 18 U.S.C. § 1623. The government contends "false declarations," generically, is broad enough to embody the obstructions of justice alleged here. Defendant disputes this generic view of the statute, but asserts that even if it is read in this fashion, there simply is no logical relationship between false swearing and obstruction of justice, and, thus, obstruction of justice cannot be considered a false swearing offense. Given the conduct that allegedly forms part of the basis for the obstruction of justice charges here, the Court doubts defendant's latter contention is

true. The Court's conclusions below concerning the doubtful application of *Apfelbaum* here and the retrospective protection afforded by the immunity statute render a resolution of these questions unnecessary.

**9.** Although § 6002 proscribes the use of immunized testimony in criminal prosecutions rather than proscribing the prosecution itself, where, as here, the testimony itself is the *corpus delicti* of the charged offense, proscribing the use of the testimony would necessarily require dismissal of the indictment.

**10.** The statement in *Apfelbaum* perhaps most relevant to the instant inquiry reads:
The legislative history of § 6002 shows that Congress intended the perjury and false-declarations exception to be interpreted as broadly as constitutionally permissible.
445 U.S. at 122, 100 S.Ct. at 952. The import of this statement is not entirely clear, however,

**672**

the Supreme Court's apparent decision that the listing of exceptions in immunity statutes for subsequent criminal prosecutions is not intended to be an exclusive enumeration, *see United States v. Tramunti*, 500 F.2d at 1345, the fact remains that a grant of use immunity does not immunize the witness from prosecution for an act committed subsequent to the granting of the immunity. Here, the alleged obstruction of justice, if it occurred at all, had to have taken place following the Court's granting defendant immunity under § 6002. It is, therefore, apparent the grant of immunity does not operate to bar the use of the immunized testimony against defendant on the obstruction of justice counts of the indictment. Accordingly, defendant's motion to dismiss on this basis must be denied.

The conclusions set forth above notwithstanding, the Court remains concerned as to the close interrelationship between the elements of "materiality" on the false declarations charge and "impeding the administration of justice" on the obstruction of justice charge. Although the cases indicate a distinction exists between the two, *cf. United States v. Kelly*, 540 F.2d 990, 993 (9th Cir. 1976) (setting forth materiality standard), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977), the realities of the situation suggest such a distinction may be more seeming than real. To the extent this is true, it appears to the Court a problem of "double punishment" might be presented. Though the Court will not embark upon an elaborate discussion of that issue here, the parties should be prepared to address it when and if it becomes appropriate.

### III. *Motion for Bill of Particulars*

For the reasons stated from the bench at the hearing on November 22, 1982, the government will not be required to produce a bill of particulars beyond that already supplied, and defendant's motion in this regard will, accordingly, be denied.

as Justice Rehnquist concluded the opinion by stating

> The exception of a perjury prosecution from the prohibition against the use of immunized

### IV. *Motion to Dismiss the Indictment on the Ground of Insufficiency*

In accordance with the Court's comments at the hearing on November 22, the issues raised by defendant in support of this motion are more properly to be resolved upon the taking of evidence at trial. Accordingly, the Court will issue no final ruling on this motion at this time.

An appropriate order will issue.

testimony may be a narrow one, but it is also a complete one.

*Id.* at 131–32, 100 S.Ct. at 957.