**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Eldridge V. BLACK, Defendant-Appellant.**

**No. 85–3047.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 22, 1985.

Decided Nov. 13, 1985.

---

Dwight E. Davis (argued), Cleveland, Ohio, for defendant-appellant.

Christian H. Stickan (argued), Asst. U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Before LIVELY, Chief Judge, and MERRITT and CONTIE, Circuit Judges.

LIVELY, Chief Judge.

A grand jury target granted use immunity in return for his cooperation in an ongoing investigation appeals from his subsequent conviction for perjury and obstruction of justice. An unartfully drawn immunity agreement contained troublesome language which formed the basis of a motion to dismiss the indictment in the district court. In this court the defendant continues to rely on an interpretation of the immunity agreement that the district court rejected.

## I.

### A.

In 1981 a federal grand jury began an investigation of alleged corruption in the administration of the Cuyahoga Metropolitan Housing Authority. Specifically, the investigation sought to learn whether contractors were making kickback payments to officials of the authority in return for work. The defendant Black was assistant chief of maintenance for the authority and was informed that he was one of the targets of the investigation. On June 23, 1982 Black and his attorney met with members of the United States Attorney's staff and confirmed that kickbacks were being paid by certain contractors. Black maintained

that he accepted payments on the instructions of his supervisors and passed the money along to them when he collected it.

On July 9, 1982 Black signed an immunity agreement with the United States Attorney. A copy is printed as an appendix to this opinion. The agreement referred to the initial meeting at which Black agreed to cooperate and a later interview with FBI agents. It then required Black to "fully cooperate with this investigation and to make a complete, truthful and candid disclosure of information you have concerning past and future violations of the criminal statutes referenced herein by you and/or others." Such disclosures were to be made both to the law enforcement officers and the U.S. Attorney's office. In addition Black was required to testify before the grand jury and at the trial of anyone charged as a result of the investigation.

In return for this cooperation and the promised disclosures the U.S. Attorney agreed to "forbear from bringing federal criminal charges against you for your actions related solely to the subject matter of this investigation and occurring since June, 1981." This promise was specifically limited to "the areas of criminal conduct revealed in the course of" Black's recently completed interview with FBI agents. Referring to Black's obligation to make a full disclosure, the agreement provided:

(2) If you fail at any time to make a complete, truthful and candid disclosure of information within your knowledge, the United States Attorney for the Northern District of Ohio will fully prosecute you on all criminal charges which can be brought against you in the Northern District of Ohio, and will use any of your sworn and unsworn statements against you in that criminal prosecution. In the event it is necessary to determine your compliance with the terms and conditions of this agreement relating to disclosure of information and testimony, the matter will be decided by the United States District Court from reports of all interviews prepared by federal law enforcement officers, statements made to

the United States Attorney's Office and/or grand jury testimony you may have given during the course of this investigation.

In addition the parties agreed that the U.S. Attorney would prosecute Black if he should commit perjury or obstruct justice during the investigation and would use any sworn or unsworn statements of Black as evidence against him in such a prosecution. Finally, the agreement provided that it would be nullified by Black's failure to make the complete, truthful and candid disclosures required of him and such breach of the agreement would release the U.S. Attorney and the Department of Justice "from any promises, requirements or commitments set forth herein."

**B.**

As the investigation continued Black met with contractors, received payments and turned over money and made reports on his activities to government officials. Some of the meetings were recorded by means of a microphone that Black wore concealed on his body. On June 7, 1983 Black testified before a federal grand jury, giving information about his contacts with, and collections from, a number of contractors. The grand jury eventually indicted four of the contractors identified by Black. During plea bargaining sessions these contractors advised representatives of the U.S. Attorney that Black had demanded kickbacks and that they had no contact with his supervisors. They also claimed that they had made larger payments than Black had reported to the government agents or testified to before the grand jury. Two of the contractors related that Black advised them when he was "bugged" so they could make exculpatory statements in response to his questions about kickbacks.

On the basis of these revelations a grand jury indicted Black on twelve counts, five for perjury and seven for obstruction of justice. The five perjury charges related to specific testimony before the previous grand jury. The obstruction of justice charges were based on evidence that Black

withheld some of the kickback payments and falsely reported to the authorities amounts less than he actually collected, and that he advised targets of the investigation that their conversations with him were being recorded.

## II.

At the beginning of the trial Black's counsel made a motion to dismiss the indictment on the ground that the immunity agreement required a determination that Black had violated the terms of the agreement before he could be indicted for criminal activity in connection with the investigation of the housing authority. Black asserted that the U.S. Attorney had breached the agreement by going before the grand jury to have him indicted without obtaining a ruling from a district court that Black had failed to perform his obligations thereunder.

The district judge deferred his ruling on the motion, but stated that he interpreted the agreement to protect Black from prosecution for any crime committed between June 1981 and July 9, 1982, the date of the agreement, assuming there was no breach. The judge then pointed out that all of the counts in the indictment charged Black with committing crimes—perjury and obstruction of justice—after July 9, 1982. This being so, the court expressed the opinion that the prosecution appeared to be "totally unrelated to the agreement." Counsel for Black then appeared to concede that the agreement did not furnish a basis for dismissal at that point:

MR. WHITEHEAD: (Counsel for Black) These subsequent charges against the defendant—we feel at this point that the trial must go forward. I don't see a basis of saying that this letter can dismiss the indictment as such, although the Court could make such a ruling, because I believe that the Government should have brought this before the Court first before they indicted him. And that is a very serious contention.

Nonetheless, Black continues to argue that the district court erred in denying his motion to dismiss.

The evidence for the government consisted principally of testimony from officers and employees of contractors who did business with the housing authority. This evidence supported charges in the indictment that Black had initiated the kickback scheme with those witnesses, beginning in 1981. The witnesses testified to payments made from that time until the period just before Black's indictment in 1983. They stated that the payments made after July 9, 1982 were substantially greater than Black reported to the authorities. In addition, two of the witnesses testified that Black wrote "bugged" on a sheet of paper and pointed to his back during conversations in which he brought up the subject of kickbacks. One of the witnesses stated that Black telephoned him before a meeting to tell him that their conversation would be recorded.

Throughout the trial Black objected to evidence of any criminal activity allegedly committed by him during the "protected period"—June 1981 to July 9, 1982. The court overruled these objections, noting that the evidence related to acts similar to those which allegedly occurred after July 9, 1982, and repeated its earlier observation that Black was not being prosecuted for kickbacks, but only for perjury and obstruction of justice. Thus, the court affirmed its previous, tentative ruling that the agreement did not control the case then being tried, because Black was not being prosecuted for receiving kickbacks, either during or after the "protected period." The court admitted the evidence of pre-July 9, 1982 criminal activity under Federal Rules of Evidence 404(b). The court instructed the jury at that time that evidence of other crimes was not substantive evidence which could be used to convict of the offenses charged in the indictment, but could be considered only for "motive, intent, opportunity, or part of the course of conduct."

At the conclusion of the government's case the district court denied Black's previously argued motion to dismiss. Counsel for Black then requested a ruling on whether Black had breached the immunity agreement. The court stated that a decision on that motion was not needed for purposes of the perjury and obstruction of justice trial, and reserved ruling until the issue might be raised in the future. This ruling was consistent with the views expressed earlier by the court that the issue of whether there had been a breach of the immunity agreement was not germane to the case then on trial, but that it would need to be decided if the government should seek to prosecute Black for his part in the kickback scheme.

Following presentation of the defendant's case, which included Black's testimony, the jury found him guilty on all twelve charges.

### III.

#### A.

Upon consideration this court concludes that the district court correctly construed the immunity agreement. The agreement guaranteed Black immunity from prosecution on substantive charges arising from the investigation of fraudulent activity by employees of the housing authority. Thus, so long as Black carried out his obligations under the agreement, he could not be prosecuted for any illegal conduct connected to his position at the housing authority that took place between June 1981 and July 9, 1982. The forbearance from prosecution was promised with respect to "federal criminal charges against you for your actions related solely to the subject matter of this investigation and occurring since June, 1981" and was limited "solely to the areas of potential criminal conduct revealed in the course of your interview with special agents of the Federal Bureau of Investigation completed by the date of this letter [July 9, 1982]." The subject matter of the investigation and the areas of potential criminal conduct referred to in the agreement concerned illegal kickbacks to employees of the housing authority, not perjury or obstruction of justice. The conclusion that the agreement applied only to substantive charges related to the kickback scheme is buttressed by the explicit warning in paragraph (3) that if Black should commit perjury or obstruct justice during the investigation or prosecution, he would be prosecuted for those offenses.

■ Since the agreement provided immunity only from prosecutions for criminal activity related to the kickback scheme, the provision in paragraph (2) requiring a determination by a district court of whether Black had complied with his obligations had no application to the prosecution for perjury and obstruction of justice. That determination would only be necessary in the event the government sought to prosecute Black for his participation in the kickback program during the period June 1981 to July 9, 1982. Though the district court properly reserved ruling on the motion to dismiss on the basis of paragraph (2), we feel it is well to note our disagreement with one argument made by Black.

Black contended that paragraph (2) required a district court determination of noncompliance *before* the U.S. Attorney could seek an indictment. We find nothing in the language of paragraph (2) to support this argument. A more logical construction would be, if the government should obtain an indictment for Black's part in the kickback scheme, he then could move to dismiss on the ground that he had been granted immunity and the government then would be required to show that he had forfeited immunity by failing to comply with the requirements of the agreement. The district court could rule on that issue either on the basis of a pretrial hearing or during the trial after the evidence had been developed. This procedure is followed when the government prosecutes for crimes allegedly committed before the period of immunity and a defendant contends the prosecution is based on statements made during the immunized period of cooperation or on evidence derived from such

statements. In *United States v. Tantalo,* 680 F.2d 903, 908 (2d Cir.1982), the court held that a defendant who raises the issue "is entitled to a fair hearing at which the Government must make an affirmative showing that evidence which the Government intended to use at trial on the original indictment was derived 'from legitimate independent sources' apart from immunized leads." The court added that it is within the district court's discretion whether this hearing should be held before trial, during the course of trial or after the verdict. *Id.* at 909.

The foregoing discussion in no way signifies our approval of the provision of paragraph (2) that has the effect of revoking immunity once given. We have grave doubts about the validity of this portion of the agreement. Immunity was granted to Black after he had completed a series of interviews with FBI agents that revealed "areas of potential criminal conduct." Like a plea agreement, an immunity agreement is contractual in nature and may be interpreted according to contract law principles. *United States v. Carrillo,* 709 F.2d 35, 36 (9th Cir.1983). Immunity was granted as the *quid pro quo* for Black's past divulgences as well as his promise of future cooperation. If the government should attempt to prosecute him for kickback activities during the protected period on the ground that he had failed to comply with all of his obligations under the immunity agreement, the district court must consider carefully whether the provisions permitting prosecution in the event of a breach by Black is enforceable.

### B.

 Having determined that the immunity agreement does not apply to the prosecution for perjury and obstruction of justice, we find no other obstacles to the prosecution. A grant of immunity applies only to the substantive offenses with which the grantee might otherwise have been charged. It does not apply to perjury and thus provides no protection from prosecution for false declarations knowingly made while testifying under the grant of immunity. *United States v. Anzalone,* 555 F.2d 317, 320 (2d Cir.), *aff'd on rehearing,* 560 F.2d 492 (1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978). Concluding that this question had been settled by the Supreme Court in *Glickstein v. United States,* 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911), and *United States v. Bryan,* 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1950), the court in *United States v. Tramunti,* 500 F.2d 1334, 1342 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974), explained its holding permitting an immunized witness to be prosecuted for perjury:

> The theory of immunity statutes is that in return for his surrender of his fifth amendment right to remain silent lest he incriminate himself, the witness is promised that he will not be prosecuted based on the inculpatory evidence he gives in exchange. However, the bargain struck is conditional upon the witness who is under oath telling the truth. If he gives false testimony, it is not compelled at all. In that case, the testimony given not only violates his oath, but is not the incriminatory truth which the Constitution was intended to protect. Thus, the agreement is breached and the testimony falls outside the constitutional privilege. Moreover, by perjuring himself the witness commits a new crime beyond the scope of the immunity which was intended to protect him against his past indiscretions. This is not only a rational explanation of the accommodation between the competing interests and rights of the parties, but it is supported by authority.

The court went on to state:

> The rationale of *Glickstein* and *Bryan* is clear. The immunity granted by the Constitution does not confer upon the witness the right to perjure himself or to withhold testimony. The very purpose of the granting of immunity is to reach the truth, and when that testimony is incriminatory, it cannot be used against him. If the witness thwarts the inquiry by evasion or falsehood, as the appellant

did here, such conduct is not entitled to immunity. In fact, another crime not existing when the immunity was offered is thereby committed.

*Id.,* 500 F.2d at 1343–44 (citations and footnote omitted).

The statute that permits a grant of use immunity to a witness who refuses to testify on the basis of the privilege against self-incrimination, 18 U.S.C. § 6002, specifically exempts from the grant of immunity a prosecution "for perjury, giving a false statement, or otherwise failing to comply with the order." In *United States v. Apfelbaum,* 445 U.S. 115, 122, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980), the Supreme Court stated, "[t]he legislative history of § 6002 shows that Congress intended the perjury and false-declarations exception to be interpreted as broadly as constitutionally permissible." Though the statute does not include prosecutions for obstructions of justice among its exceptions, we agree with the court in *United States v. Caron,* 551 F.Supp. 662 (E.D.Va.1982), *aff'd mem.,* 722 F.2d 739 (1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984), which held that § 6002 does not proscribe the use of immunized testimony in a prosecution for obstruction of justice. The court emphasized the fact that a grant of immunity relates to the past, not to future conduct, and the obstruction of justice must have occurred after immunity had been granted. 551 F.Supp. at 672. On the basis of *Glickstein, Bryan* and *Tramunti,* the court concluded that the exceptions in § 6002 are broad enough to permit the use of immunized testimony against one who has "allegedly committed perjury *or otherwise subverted* the functioning of a tribunal." *Id.* at 671 (emphasis added). We agree with this reasoning.

### IV.

One other issue raised by Black requires our consideration. Over Black's objections the government introduced a large amount of evidence that implicated Black as one who received kickbacks before, during and after the date of the immunity agreement. The district court admitted this evidence under Fed.R.Evid. 404(b)[1] and gave a limiting instruction. This issue raises two distinct questions. The first is whether admission of the evidence violated terms of the immunity agreement, and the second is whether the evidence was admissible under the Federal Rules of Evidence.

### A.

■ Black contends that the evidence pertaining to his activities between June 1981 and July 9, 1982 was either based directly on or derived from the information he provided the FBI prior to July 9, 1982. He argues that the government was not permitted to use this evidence without first obtaining a determination that he had breached the agreement. In this position he again fails to distinguish between use of the evidence in a prosecution for substantive offenses under the investigation in which he was a target and its use to support a prosecution for perjury and obstruction of justice. We reject this argument for the reasons set forth in Part III, A. of this opinion.

■ Black also asserts that it was error to permit testimony of his activities after July 9, 1982 because the agreement granted immunity for future criminal violations during the course of the investigation. The poor draftsmanship of the agreement lends support to this argument. In the third literary (unnumbered) paragraph of the agreement, there is a reference to "disclosure of information you have concerning past and future violations of the criminal statutes referenced herein by you and/or others." However, the agreement does not state or imply that immunity will apply to future crimes he may commit. That paragraph begins, "Therefore, if you agree . . . ." It merely makes clear that Black must provide information for the en-

---

1. Rule 404(b) provides:

 Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

suing investigation, including information of crimes occurring between the date of the agreement and the end of the investigation. The agreement does not purport to grant immunity for future crimes. This is made clear in the next succeeding paragraph which provides, "This promise of forbearance is limited solely to the areas of potential criminal conduct revealed in the course of your interview with special agents of the Federal Bureau of Investigation completed by the date of this letter." It is too firmly established that grants of immunity do not license future criminal conduct to permit any other construction of the language in the agreement.

This is not to say that immunity could not be granted a cooperating individual for future acts that in other circumstances might be criminal. See *United States v. Irwin*, 612 F.2d 1182, 1192 n. 22 (9th Cir. 1980) ("We do not hold, however, that a person would be guilty of an offense where he participates in criminal activity solely to protect or continue to maintain his undercover status. In such a situation the action might be necessary to fulfill his part of the plea agreement.") · However, that is not the issue here. If Black is charged with violations of anti-kickback laws based on his activities during the post-July 9, 1982 period of the investigation, then that will be the time to present this argument. This contention has no relevance to the present case because this prosecution is not for kickback-related crimes during the investigation; it is for perjury and obstruction of justice. Therefore, once again, reliance on the immunity agreement is misplaced.

**B.**

The evidence was admissible in this case if permitted by the Federal Rules of Evidence. In *United States v. Apfelbaum*, *supra*, 445 U.S. at 131, 100 S.Ct. at 957, the Supreme Court stated:

> [N]either the immunity statute nor the Fifth Amendment precludes the use of respondent's immunized testimony at a subsequent prosecution for making false statements, so long as that testimony conforms to otherwise applicable rules of evidence.

As we have noted, the district court admitted the questioned evidence pursuant to Rule 404(b) for the limited purpose of showing "motive, intent, opportunity, or part of the course of conduct." In colloquy with counsel the court acknowledged that evidence may be excluded, even if relevant, if the probative value is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403; *United States v. Largent*, 545 F.2d 1039, 1043 (6th Cir.1976), *cert. denied*, 429 U.S. 1098, 97 S.Ct. 1117, 51 L.Ed.2d 546 (1977).

■ We conclude that this evidence was relevant to the prosecution for perjury and obstruction of justice and, in fact, was central to the establishment of those charges. The decision whether to admit evidence of other crimes and wrongs is committed to the sound discretion of the trial judge. *United States v. Cooper*, 577 F.2d 1079, 1088 (6th Cir.), *cert. denied*, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978). The court made it clear to the jury that Black was on trial only for perjury and obstruction of justice and that the evidence objected to could not be considered as proving those charges. However, this evidence did tend to make the existence of the facts charged as constituting perjury and obstruction of justice "more probable ... than [they] would be without the evidence," and therefore relevant. Fed.R.Evid. 401. The district court properly consulted the "otherwise applicable rules of evidence," and we find no abuse of discretion in its ruling.

The judgment of the district court is affirmed.

APPENDIX I

U.S. Department of Justice

*United States Attorney Northern District of Ohio*

Suite 500
1404 East Ninth Street
Cleveland, Ohio 44114
July 9, 1982

Mr. Eldridge Black, Sr.
310 East 273rd Street
Euclid, Ohio

Re: Grand Jury Investigation of the Cuya-
hoga Metropolitan Housing Authority

Dear Mr. Black:

The United States Attorney's Office for the Northern District of Ohio is presently engaged in a grand jury investigation concerning fraudulent activity involving employees of the Cuyahoga Metropolitan Housing Authority and others. Discussions between this office and you, along with your attorney, Mr. George Whitehead, have indicated that you had direct and personal knowledge of occurrences reflecting the aforementioned criminal activity. As a result of these discussions, a preliminary proffer was made on your behalf by your attorney which indicated the general subject areas of your personal knowledge and involvement.

After this proffer, it was decided that you would submit to an interview with special agents of the Federal Bureau of Investigation to determine the full extent of your knowledge and involvement relative to those matters. For this interview you had the assurance of this office that information relating solely to the subject matter of this investigation which you revealed in the course of any interviews with federal law enforcement officers, and reports prepared from said interviews, will be treated the same as statements made before a grand jury pursuant to a court order compelling testimony and granting immunity. That interview has now been completed.

Therefore, if you agree, upon the request of this office, to fully cooperate with this investigation and to make a complete, truthful and candid disclosure of information you have concerning past and future violations of the criminal statutes referenced herein by you and/or others, to federal law enforcement officers, the United States Attorney's Office, before the grand jury and at the trial of any person ensuing from this investigation, the United States Attorney for the Northern District of Ohio states and agrees to the following:

(1) In return for such disclosure of information, cooperation, and testimony, the United States Attorney for the Northern District of Ohio will forbear from bringing federal criminal charges against you for your actions related solely to the subject matter of this investigation and occurring since June, 1981. This promise of forbearance is limited solely to the areas of potential criminal conduct revealed in the course of your interview with special agents of the Federal Bureau of Investigation completed by the date of this letter.

(2) If you fail at any time to make a complete, truthful and candid disclosure of information within your knowledge, the United States Attorney for the Northern District of Ohio will fully prosecute you on all criminal charges which can be brought against you in the Northern District of Ohio, and will use any of your sworn and unsworn statements against you in that criminal prosecution. In the event it is necessary to determine your compliance with the terms and conditions of this agreement relating to disclosure of information and testimony, the matter will be decided by the United States District Court from reports of all interviews prepared by federal law enforcement officers, statements made to the United States Attorney's Office and/or grand jury testimony you may have given during the course of this investigation.

(3) If during this investigation or prosecution you should commit perjury, suborn perjury or obstruct justice, the United States Attorney for the Northern District of Ohio will prosecute you to the fullest extent provided by law and will use any sworn or unsworn statements you have made against you in that criminal prosecution.

(4) You should also understand that your failure to make a complete, truthful and candid disclosure of information within your knowledge, subject solely to the terms and conditions set forth herein, shall render null and void and releases the United States Attorney for the Northern District of Ohio and the United States Department of Justice from any promises, requirements or commitments set forth herein.

The foregoing represents any and all promises and commitments being made to you on behalf of this office and United States Department of Justice. If these terms and conditions are satisfactory, please indicate your assent by signing in the space indicated below. You may wish to consult with an attorney before executing this document. Please return the original copy signed by you and your attorney to the undersigned.

Very truly yours,

J. WILLIAM PETRO
United States Attorney

By:

Ralph Cascarilla
Assistant U.S. Attorney
216/522–3694

Kenneth S. McHargh
Assistant U.S. Attorney
216/522–7369

I have read the foregoing terms and conditions and I have discussed them with my attorney. I fully understand and accept them. I further represent that this agreement is executed voluntarily and is of my own free will. No promises, commitments or understandings have been made to or for me in connection with the execution of this agreement other than those set forth above.

I hereby indicate by assent to all of the terms and conditions of this agreement by my signature below.

_____

Eldridge Black, Sr.

_____

Date

George Whitehead, Esq.
Attorney for Eldridge Black, Sr.

_____

Date

WITNESS:

_____

_____

Date